# WHEELING.

STATE v. CHILTON.

49 453
60 169

Decided June 11, 1901.

1. SECRETARY OF STATE—*Duties—Negligence.*

The Secretary of State cannot sell the books of the State on credit; and if he does he is accountable for their proceeds as if sold for cash. But he is not responsible for those books deposited in lots, with booksellers for sale on commission, unless he receives the money or is chargeable with negligence in some way respecting them. (p. 460).

2. OFFICER'S DUTIES—*Selling Books.*

A practice for some time prevalent in the office of the Secretory of State of selling State books on credit gives no warrant for such credit sales. (p. 460).

3. AGENT'S DUTIES—*Authority—Law.*

An agent cannot sell on credit, unless so authorized by his power of attorney or by the fixed usage of trade in reference to the article sold, and such usage cannot prevail contrary to such power of attorney or the law, and moreover such usage must be brought home to the knowledge of the person affected. (p. 461).

4. AGENT'S ACTS—*Scope of Authority.*

Acts of a private agent may bind the principal where they are within the apparent scope of his authority; but not so with a public officer, as the State is bound only by authority actually vested in the officer, and his powers are limited and defined by its laws. (p. 462).

5. PUBLIC OFFICERS—*Conduct—Estoppel.*

A state is not bound by the unauthorized acts of public officers. Their misconduct is no estoppel against the state. (p. 462).

Error to Circuit Court, Kanawha County.

Action by the State against William E. Chilton. Judgment for the State for a less amount than the sum claimed, and it brings error.

*Reversed.*

E. P. RUCKER, EX-ATTY. GEN., and L. C. ANDERSON, for the State.

CHILTON, MACCORKLE & CHILTON, for defendant in error.

BRANNON, PRESIDENT:

The State brought an action of debt upon the official bond given by William E. Chilton as Secretary of State charging that he had sold books of the State and failed to account for their proceeds to the amount of seven thousand dollars, and had received taxes upon State seals amounting to three thousand dollars, and failed to account therefor. Chilton pleaded that he did not owe the sums alleged in the declaration. Chilton tendered six thousand four hundred and ninety dollars, as in full of his liability, which the State declined to accept. A jury was waived and the case was tried by the court, and upon the evidence the court found that Chilton owed the State only the sum tendered, and rendered judgment for the State for the sum tendered, and the State brought the case to this Court.

The bill of exceptions says that the State "offered in evidence the report of W. E. Chilton, as Secretary of State, showing that he had received including interest thereon on account of State seals the sum of two thousand sixty dollars and sixty-four cents, and on account of books which had been sold by W. E. Chilton the sum of four thousand four hundred and twenty-nine dollars and forty-two cents, including interest which two sums with interest thereon is up to this date as claimed by the plaintiff amount to six thousand four hundred and ninety dollars and six cents, and thereupon the plaintiff offered evidence to prove that while said Chilton was Secretary of State he had sold books to sundry persons amounting to the sum of one thousand eight hundred and twenty-eight dollars, which said books so sold had been accounted for by the said Chilton as Secretary of State, and the amounts of said sales had been charged on his books as Secretary of State against persons to whom they had been sold but that said Chilton had not received the money therefor. It is further proved that it has been the custom of the office of the Secretary of State to sell books in this way to customers and leave the accounts to be collected by subsequent secretaries of State; and that in making such sales of books on credit the said Chilton had followed the usual rule and custom which had obtained for many years in the office of the Secretary of State. And thereupon the State by its attorney contended that the amount of such sales to-wit: said sum of one thousand eight hundred and twenty-eight dollars, shall be paid to the State by the defendant but the

defendant maintained that he having not received the money for said sales was not chargeable with said sums and the court decided and held that under the evidence and the law the defendant is not chargeable with the amount of said sales the proceeds of which had not come into his hands and thereupon decided and held that the true amount of the claim of the plaitniff against the defendant was said sum of six thosuand four hundred and ninety dollars and six cents, to which ruling and action of the court the plaintiff objects and excepts and prays that this its bill of exceptions be signed, sealed and saved to it which is accordingly done."

The circuit court rejected this evidence offered by the State because the court was of opinion that by law defendant was not chargeable with the amount of sales where he had not actually received the money. In this opinion we by no means concur. We hold that the Secretary of State has no color of authority to sell State books on credit. If he does, he must account for the money as if he had received it. Under chapter 15, section 5, Code 1891, he may deposit with book-sellers books in lots for sale on commission, and he is not accountable for them except for negligence causing loss to the State; but that is not a sale. It is not shown that such was the liability in this case. It is not shown, as it must be to exempt him from liability, that the books were put in the hands of booksellers as mere depositories, as allowed by the statute. That is the only case where the secretary is not at once accountable where books go out of his custody. On the contrary it is shown that he sold to sundry and divers individuals by single books on credit. After making such provision as to deposit of books with booksellers for sale, the Code section closes with the following separate and additional provision: "The secretary may himself sell any of said reports. The proceeds of all sales shall immediately be paid into the treasury." What could more plainly require cash sales? This Court cannot give legal sanction to loose practice in a public officer inevitably resulting in loss to the treasury, where strict accountability is prescribed by statute as well as common law. Secretary Chilton may have in so doing followed in the steps of predecessors in office, and made no personal gain, and meant no wrong; (It is not and cannot be charged that he did) but it was his mere personal favor to individuals, mere unauthorized credit to them, and fosters a practice that will inevitably end in loss to the

State, as would be the case in this instance, as the fact that the books were to so large an amount unpaid for indicates very strongly that the accounts for them against individuals are uncollectible to great extent. Whether they are solvent or insolvent accounts is no matter. The State is not bound to look to the purchasers of the books. It cannot be required to go into the various counties before justices to collect these small debts here and there over the State. The secretary let the books go from the State's possession, and must account for their prices. He cannot sell without cash payment. Who can construe this statute to mean anything else? Did the legislature mean anything else? Did it mean to let a secretary sell books all over the State, and compel the State to hunt up purchasers or sue them before the justices? An agent of even an individual cannot sell on credit unless he has authority. *Dyer* v. *Duffy,* 39. W. Va. 148, (1 Am. & Eng. Ency. Law 1014). Much less can a public officer-agent acting only under the statute. "Grants of power to public officers are usually subjected to strict interpretation, and will be construed as conferring those powers only which are expressly imposed or necessarily implied. Such an officer can create rights against the State or other public authority represented by him only while he is keeping strictly within the limits of his authority as so construed." Mechem Public Off, s. 511. As to the force of an agent's act to bind his principal in favor of third persons there is a marked distinction, from public policy, between a private agent and a public one. In the case of the private agent his act for which the principal has apparently given authority is good; while in the case of the public agent the government is bound only by the authority it has actually given its officer. "This rule is indispensible to guard the public against loss and injury from the fraud, mistake or rashness and indiscretion of their agents." Story Agency, s. 307 *a*, (9th Ed.); Mechem Pub. Off., s. 512; *Mayor* v. *Eschback,* 18 Md. 276; *Delafield* v. *State,* 26 Wend 192. If the State is not bound to innocent third parties for the unwarranted act of an agent, how much less is it bound as between it and the agent himself?

But it is suggested that the secretary followed the practice of his predecessors in office. The books say that an agent cannot sell on credit without authority, unless such is the usage of trade. By this usage of trade the law means a particular thing. It means usage fixed in the commercial law, an usage recognized by

it in what is known as "trade," not some instances of action by an agent, one public officer. That makes no usage of trade. But an all sufficient answer to this point is, that the statute means a cash sale only, and no usage can violate fixed provisions of a power of attorney or statute. *Johnson* v. *Burn,* 39 W. Va. 658; 1 Am. & Eng. Ency. L., ss. 1001, 1062. Infinite authority exists for the law proposition that the powers and duties of all governmental officers "are limited and defined by laws," by statute where one exists as in this case. It is the sole criterion of authority, and no custom can enlarge or vitiate it. The Floyd Acceptances, 7 Wall. 666. This usage theory was assigned in the case just cited, to bind the government to commercial paper accepted by the Secretary of War, as it had been the custom for the secretary to make such acceptances; but the court repudiated the doctrine upon the fixed principle that such custom could not prevail against law. The court said that such unauthorized acts by an officer, however frequent, could not stand as a foundation for the authority assumed. Such a practice (I will not call it custom or usage) such a personal practice of individual secretaries, cannot be upheld by this Court, because contrary to the plain import of the statute, and calculated to encourage loose official practice entailing loss on the State. There is no need or justification for it. Another reason against the recognition of this practice is, that to be good, even as to an individual principal it must be brought home to the knowledge of that principal. *Johnson* v. *Burns,* 39 W. Va. 658. How will you bring it home to the State? To what officer? To the Governor or Auditor, surely not? To the secretary himself? A public officer cannot ratify expressly his own unauthorized act, and surely cannot do so by such mere implication. *State* v. *Hays,* 52 Mo. 578; *Delafield* v. *State,* 26 Wend. 192. Having no power to make credit sales, by his own knowledge that he did make them, neither he nor his predecessors could by that knowledge ratify the acts to protect themselves against the State demands. Estoppels do not generally bind a State, that is estoppel by conduct of its officers. "Clearly the State cannot be estopped by unauthorized acts of its officers." Bigelow on Estoppel 341; *U. S.* v. *Kirkpatrick,* 9 Wheaton 735. This is even as to third parties and more so as to officers themselves.

Speaking of usage, it must, to be good, be a usage of trade connected with the sale of the particular article, one authorizing

its sale on credit; but when the nature of the thing forbids credit, you cannot justify it by usage, even if no statute forbade it. As in the case, *Delafield* v. *State,* just cited, it could not be contemplated that State bonds should be sold on credit, so it cannot be thought that the legislature intended to allow single books to be credited out over the State. Story on Agency, s. 78.

Upon these principles we are compelled to reverse the judgmnt, set aside the circuit court's finding for the defendant, and remand the case for re-trial, with direction to admit the said evidence, as it constitutes in the opinion of this Court ample ground of recovery by the State, and for further proceeding according to the principles of law above stated.

DENT, JUDGE, (*Concurring*) :

There is not the slightest evidence offered in this case tending to show loss to the State through Mr. Chilton having followed the usual custom of his office in extending temporary credit to the State's customers.

The sole question seems to be whether the present Secretary of State should receive the State's money from the State's customers to the relief of his predecessor, or whether Mr. Chilton should be required to pay over the same in the first instance and look to such customers for reimbursement. Had there not been a change of political administration the former course would have been no doubt persued, for it is much easier not to extend customary courtesies to our political opponents than our political friends, especially if the exigencies of politics appear to require a public exhibition of strict and unbending adherence to law broken in its letter though without apparent detriment or loss.

If Mr. Chilton extended credit alone to responsible persons neither he nor the State can lose anything thereby. If he extended credit to irresponsible persons he must bear the loss.

For this reason I concur in the reversal of this case, that there may be a full investigation and the loss if any may be placed where it ultimately belongs without further litigation.

*Reversed.*