Argued March 5, recommendations of the Oregon Judicial
Fitness Commission approved and adopted May 8, 1979

In the Matter Of: The Honorable
LOREN L. SAWYER, *Judge.*
(CJF 3, SC 25876)

594 P2d 805

The Honorable Loren L. Sawyer, Circuit Judge, Medford, argued the cause and filed the brief in propria persona.

Arthur C. Johnson, Eugene, argued the cause and filed the brief for the Commission on Judicial Fitness. With him on the brief was Timothy J. Sercombe, and Johnson, Harrang & Mercer, Eugene.

PER CURIAM.

Linde, J., dissenting opinion.

## PER CURIAM.

This is a proceeding under ORS §§ 1.420 and 1.430 to inquire into the conduct of a circuit judge.[1] It arises from a complaint by the Commission on Judicial Fitness charging Judge Sawyer with conduct contrary to the restrictions of Article III, § 1 of the Oregon Constitution in that he has been employed as a part-time teacher at Southern Oregon College, a state-supported school of higher education, at a salary of $3,200 per year, while at the same time holding office as a circuit judge.[2]

In his answer to that complaint Judge Sawyer admitted such employment, but denied that such conduct was contrary to the requirements of Article III, § 1. As affirmative defenses he also contended that the Commission had "no standing or jurisdiction" to question the propriety of such conduct because: (1) no complaint had been made to the Commission concerning such conduct, and (2) the complaint does not allege

---

[1] ORS 1.420 provides, in part:

"(1) Upon complaint from any person concerning the conduct of a judge or upon request of the Supreme Court, and after such investigation as the Commission on Judicial Fitness considers necessary, the commission may:

"(a) Hold a hearing pursuant to subsection (2) of this section, to inquire into the conduct of the judge;

"* * * * *

"(4) If, after hearing or after considering the record and report of the masters, the commission finds that the conduct of the judge justifies censure, suspension or removal from office, the commission shall recommend to the Supreme Court the censure or suspension or removal of the judge."

ORS 1.430 provides, in part:

"(1) The Supreme Court shall review the record of the proceedings under ORS 1.420 on the law and facts and may receive additional evidence. The Supreme Court may censure the judge or it may order the judge suspended or removed from office."

[2] Article III, § 1 of the Oregon Constitution provides:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and *no person charged with official duties under one of these departments, shall exercise any of the functions of another,* except as in this Constitution expressly provided." (Emphasis added)

[371]

"acts" over which the Commission has been granted jurisdiction by Article VII, § 8 (Amended) of the Oregon Constitution.[3]

After a hearing before it, the Commission made a finding of fact that Judge Sawyer had been employed as alleged by it and as admitted by him. The Commission also made conclusions of law to the effect that it had jurisdiction over the subject matter, and that while serving as a member of the judicial branch of government, Judge Sawyer had wilfully violated Article III, § 1 of the Oregon Constitution, contrary to the requirements of his office and to the provisions of Canons 2A and 5G of the Code of Judicial Conduct, adopted by the Oregon Supreme Court on March 11, 1975.[4]

Based upon such findings and conclusions the Commission on Judicial Fitness made a recommendation to this court that Judge Sawyer be suspended from his office as circuit judge during any time that he is regularly employed as a part-time teacher by any state-funded college.

Three questions are presented for decision:

(1) Does ORS 1.420(1) require, as a jurisdictional prerequisite to action by the Commission on Judicial Fitness, a formal complaint which must be disclosed to the judge under investigation?

(2) Does a circuit court judge who is regularly employed as a part-time teacher for pay by a state-funded college violate Article III, § 1 of the Oregon

_____

[3] Article VII, § 8 (Amended) of the Oregon Constitution provides, in part:

"(1) In the manner provided by law, and notwithstanding section 1 of this Article, a judge of any court may be removed or suspended from his judicial office by the Supreme Court, or censured by the Supreme Court, for:

"* * * * *

"(e) Wilful violation of any rule of judicial conduct as shall be established by the Supreme Court;"

"* * * * *"

[4] The provisions of these Canons are set forth on page 12 and in note 13 on page 18.

Constitution as interpreted in Monaghan v. School District No. 1, 211 Or 360, 315 P2d 797 (1957)?

(3) If so, is such conduct of such a nature as to subject such a judge to proceedings under ORS 1.420?

■ *ORS 1.420(1) does not require as a jurisdictional prerequisite that there be a formal complaint which must be disclosed.*

It is contended by Judge Sawyer that:

"There is nothing in the record of this proceeding showing that the Supreme Court of this state, or that any individual, has complained about the conduct of Judge Sawyer in teaching at Southern Oregon State College. Due process would require that the accused be notified who his accuser is if, in fact, a complaint has been filed. If no complaint has been filed by an individual, then it is clear that it is beyond the jurisdiction of the Judicial Fitness Commission to act in this matter until such time as a complaint is filed."

ORS 1.420(1) provides:

"Upon complaint from any person concerning the conduct of [any] judge or upon request of the Supreme Court, and after such investigation as the Commission on Judicial Fitness considers necessary, the commission may:

(a) Hold a hearing pursuant to subsection (2) of this section, to inquire into the conduct of the judge; * * *"

ORS 1.420(2) requires the Commission to adopt rules of procedure governing its proceedings, which rules as adopted include rules providing for investigation of "information," "notice" and the preparation and service of formal charges.[5]

---

[5] Those rules provide, among other things:
"Rule 9. *INVESTIGATION*
(a) *Preliminary Investigation*
The Commission, upon receiving information indicating that a judge's behavior comes within the purview of Section 8, Article VII (Amended) of the Constitution of the State of Oregon, shall make such investigation as it deems necessary to determine whether formal proceedings should be instituted and a hearing held."
"* * * * *"

█ It is contended that if this were a criminal proceeding due process would require that the accused be notified "who his accuser is." We have previously held that a proceeding to discipline a lawyer for misconduct is not a criminal proceeding. *See, e.g., In re J. Kelly Farris,* 229 Or 209, 218-19, 367 P2d 387 (1961). We hold that the same rule applies to a proceeding to discipline a judge under ORS §§ 1.420 and 1.430.

█ We also hold that the reference in that statute to a "complaint from any person" does not impose a jurisdictional requirement that there be a formal complaint by some identifiable person and that the accused judge must be informed of the identity of such a complainant and be provided with a copy of such a complaint, at least when, as in this case, there is no dispute as to the facts. It may be, however, that in a proceeding in which the facts are in dispute, an accused judge would be entitled to examine any evidence developed during the course of the investigation favorable to him.[6] In this case, however, the facts are not in dispute.

---

"Rule 10. *FORMAL PROCEEDINGS*

(a) *Notice*

After the investigation has been completed, if the Commission concludes that formal proceedings should be instituted it shall give written notice to the judge advising him of the institution of formal proceedings to inquire into the charges against him.

(b) *Title of Proceedings*

Such proceedings shall be entitled:

'BEFORE THE COMMISSION ON JUDICIAL FITNESS, STATE OF OREGON
Inquiry Concerning a Judge, No. ___.'

(c) *Content of Notice*

The notice shall be issued in the name of the Commission and specify in ordinary and concise language the charges against the judge and the alleged facts upon which such charges are based, and shall advise the judge of his right to file a written answer, under oath or affirmation, to the charges against him within 15 days after service of the notice upon him."

"* * * * *"

[6] *Cf. People ex rel Illinois Judicial Inquiry Board v. Hartel,* 72 Ill 2d 225, 380 NE2d 801 (1978).

[374]

We believe that the statute contemplates that the Commission may undertake the investigation of the conduct of a judge upon the basis of any information coming to it from "any person," including any information coming to it through any of its members or staff. We also believe that the Rules of Procedure, as adopted by the Commission, are in accord with the provisions and intent of ORS 1.420 and that they are adequate for the purpose of informing an accused judge of the nature of the charges against him in a case such as this.

2. *A judge regularly employed as a part-time teacher for pay by a state-funded college violates Article III, § 1 of the Oregon Constitution.*

The facts of this case are undisputed and admitted by the pleadings. Judge Sawyer is a circuit court judge in the First Judicial District of the State of Oregon. His present term of office expires on January 5, 1981. Judge Sawyer has been and is now employed by the State Board of Higher Education as a part-time lecturer on criminal law, criminology, juvenile law and corrections at Southern Oregon College. For these services he is paid $3,200 per year.

In *Monaghan v. School District No. 1,* 211 Or 360, 315 P2d 797 (1957), this court held that a person serving as a member of the state legislature could not, at the same time, serve as a teacher in a public school because of the provision of Article III, § 1 of the Oregon Constitution, that:

"* * * no person charged with official duties under one of these departments [legislative, executive and judicial], shall exercise any of the functions of another, except as in this Constitution expressly provided."

Since then the Constitution has been amended by the addition of Article XV, § 8 so as to specifically permit

teachers to serve as legislators.[7] Article III, § 1 has not itself been amended, however, so as to permit judges to serve as teachers.

In the course of arriving at its conclusion in *Monaghan* that legislators may not serve as teachers in public schools because of the requirements imposed by Article III, § 1, this court said (at 373) that:

> "Education * * * is a governmental obligation of the state. Few of our administrative agencies are creatures of the organic law. But, as to schools, the constitution mandates the legislature to provide by law 'for the establishment of a uniform, and general system of Common schools.' Oregon Constitution, Art VIII, § 3; * * *."

and, at 374:

> "* * * Teachers are employees hired by a state agency whose function it is to serve the state in the exercise of its sovereign power and duty as mandated by. Art VIII, § 3 of the Oregon Constitution."

and, at 376:

> "It is through the teacher, not the school district, that the state's standards of educational excellence are disseminated. *When so engaged, they are exercising one of the functions of the executive department of our state government.*" (Emphasis added)

We believe that these statements are still correct and that they are controlling in our disposition of this case.

In *Monaghan* we then recognized (at 376) that the teacher-legislator involved in that case had not used his dual position "to the detriment" of either the executive or legislative department of government and

---

[7] Article XV, § 8 provides:

"Notwithstanding the provisions of section 1 article III and section 10 article II of the Constitution of the State of Oregon, a person employed by the State Board of Higher Education, a member of any school board or employee thereof, shall be eligible for a seat in the Legislative Assembly and such membership in the Legislative Assembly shall not prevent such person from being employed by the State Board of Higher Education or from being a member or employee of a school board."

that he had "no unworthy motive in his desire to retain both places at the same time." We recognize the same to be true in this case with respect to the conduct of Judge Sawyer in his dual capacity as a judge and as a teacher in a state-supported school.

As we stated, however, in *Monaghan* (at 376):

"Our concern is not with what has been done but rather with what might be done, directly or indirectly, if one person is permitted to serve two different departments at the same time. The constitutional prohibition is designed to avoid the opportunities for abuse arising out of such dual service whether it exists or not. * * *."

We went on in *Monaghan* to point out that "conceivably" a school board could say to a teacher serving in the legislature that he must vote in favor of bills advantageous to the school district; that if he did so his salary would be increased, and that if he did not do so he would be "penalized." Similarly, and contrary to the contentions by Judge Sawyer, it is "conceivable" that a judge who is regularly employed as a part-time teacher for pay by a state-funded college could be placed in a position in which he would be expected by the college, as his employer, to rule favorably to it in matters coming before him for decision as a judge, with the understanding that if he did so his salary would be increased and that if he did not do so he would be "penalized" in some manner.

Judge Sawyer contends that as a part-time, rather than as a full-time teacher, he is not exercising any "official" executive "duties" and therefore is not performing executive "functions." In *Monaghan,* however, this court (at 370) interpreted "functions" more broadly as follows:

"But the exercise of the 'functions' of a department of government gives to the word 'functions' a broader sweep and more comprehensive meaning than 'official duties.' It contemplates a wider range of the exercise of functions including and beyond those

which may be comprehended in the 'official duties' of any one officer.

"It may appear to some as a construction of extreme precaution, but we think that it expresses the considered judgment and deliberation of the Oregon Convention to give greater force to the concepts of separation by thus barring any official in one department of government of the opportunity to serve any other department, even as an employee. * * *"

■ It is true that Judge Sawyer is not a full-time teacher. In our opinion, however, a part-time teacher regularly employed for compensation by a state-funded college to perform the duties of a teacher also performs "functions" of the executive department of government within the meaning of Article III, § 1, as construed by this court in *Monaghan.*

■ It follows, in our judgment, based upon the reasoning adopted by this court in *Monaghan,* which we believe to be correct, that the Commission on Judicial Fitness was also correct in its conclusion that Judge Sawyer could not properly serve the State of Oregon both as a circuit judge and, at the same time, as a regularly employed part-time teacher for compensation at a state-funded college.[8]

3. *A judge whose conduct violates Article III, § 1 of the Oregon Constitution is subject to proceedings under ORS 1.420.*

In his second affirmative defense Judge Sawyer contends that the complaint does "not allege acts over which the Judicial Fitness Commission has been granted jurisdiction by Article VII, § 8 of the Oregon Constitution." Thus, it is contended by Judge Sawyer that his conduct did not violate any of the Canons of the Code of Judicial Conduct adopted by this court.

■ Article VII, § 8 (Amended) of the Oregon Constitution (as adopted by vote of the people on November 5,

---

[8] We do not undertake to decide in this case whether the same result would necessarily follow in the event that a judge should occasionally, but not regularly, lecture at a state-funded college, but without other responsibilities as a teacher.

1968, and as amended on May 25, 1976) provides that "in the manner provided by law" a judge may be removed, suspended or censured by the Oregon Supreme Court for "[w]ilful violation of any rule of judicial conduct as shall be established by the Supreme Court."[9] ORS 1.410 et seq provides for the establishment of the Judicial Fitness Commission and the "manner" by which a judge may be disciplined for such conduct. It follows, in our opinion, that the Commission had jurisdiction over the subject matter of this proceeding for the purpose of making findings of fact, conclusions of law and recommendations to the Oregon Supreme Court upon the question whether the conduct of Judge Sawyer was in "wilful violation" of any rule of judicial conduct established by this court.

The Code of Judicial Conduct adopted by the Oregon Supreme Court on March 11, 1975, includes Canon 2. Canon 2 provides in part as follows:

"A Judge Should Avoid Impropriety and the Appearance of Impropriety in All [of] His Activities.

"A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

"* * * * *"

In addition, all circuit judges are required to take an oath to support the Constitution of the State of Oregon.[10]

---

[9] *See* note 3, *supra.*

[10] Article VII, § 10 (Original) of the Oregon Constitution provides that circuit judges "shall take the same oath as the Supreme Judges."

Article VII, § 7 (Amended) of the Oregon Constitution provides:

"Every judge of the supreme court, before entering upon the duties of his office, shall take and subscribe, and transmit to the secretary of state, the following oath:

'I, _____ _____, do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of Oregon, and that I will faithfully and impartially discharge the duties of a judge of the supreme court of this state, according to the best of my ability, and that I will not accept any other office, except judicial offices during the term for which I have been elected.'"

The Oregon Code of Judicial Conduct, including Canon 2A, is based upon the Code of Judicial Conduct as prepared by the American Bar Association Special Committee on Standards of Judicial Conduct and as adopted by its House of Delegates on Autust 16, 1972, with some changes based upon recommendations by the Oregon Circuit Judges Association, the Oregon District Judges Association and the Oregon State Bar. No changes were suggested or adopted, however, in the provisions of Canon 2A, as recommended by the American Bar Association.

In considering the application of Canon 2 it is of interest to note the Commentary to that Canon, as adopted by the American Bar Association, as follows:

"Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly."

Also of interest is the following statement in the Reporter's Notes to Code of Judicial Conduct by E. Wayne Thode, at page 49:

"The black-letter statement of Canon 2 is very broad in its terms and perhaps the nearest to being hortatory of any provision in the Code. Its origin is found in old Canon 4. The Committee was of the opinion that despite the generality, an 'impropriety and the appearance of impropriety' standard is necessary. The need for frequent references to that standard throughout the Reporter's Notes demonstrates the wisdom of that decision."

It is contended by Judge Sawyer that Canon 2 has no proper application in this case for the following reasons:

"There is nothing in the allegations of the complaint or in the record before the Commission which indicates that the conduct of the judge, in teaching, has in any way undermined the public confidence or

[380]

the integrity in the judiciary. If teaching by a state court judge would undermine the confidence in or the integrity of the judiciary, then the issue raised by these proceedings would not be limited to judges teaching in state-supported institutions but would also apply to those teaching in private colleges as well. A judge, by his oath of office, agrees to uphold the Constitution of the State of Oregon. There have been no decided cases, and there is no clear language in the Constitution or the Statutes of this state, which prohibit the conduct at issue here.

"The Fitness Commission is relying on the Attorney General's opinion, holding that the conduct is in violation of the State Constitution. The Attorney General's opinion, however, does not have the force and effect of law, and is clearly not binding on a judge of this state."

In our view, the question to be decided is not whether teaching by a judge may undermine public confidence in the judiciary. Instead, the question is whether a judge who continues to teach in a state-supported college with the knowledge that by doing so he is violating the provisions of Article III, § 1 of the Oregon Constitution is, by such a continued course of conduct, in "wilful violation" of the requirement of Canon 2 that "a judge should respect and comply with the law," regardless of its more general requirement that "a judge should avoid impropriety and the appearance of impropriety in all his activities."

We recognize that some "violations of law" (such as minor traffic infractions) may be of such a nature as to not come within the intended meaning of Canon 2A. We also recognize that there may be cases in which a judge may engage in conduct in the good faith belief that such conduct does not violate the law when, in fact, such conduct does violate the law. In such cases, depending on the facts, discipline by removal, suspension or censure may not be appropriate.

In this case, however, it appears that the conduct in question related directly to the performance by Judge Sawyer of his judicial duties, at least in the sense that

by accepting regular employment for compensation as a teacher in a state-funded school he was disqualified from the performance of his judicial duties by reason of Article III, § 1 of the Oregon Constitution. In addition, it appears in this case that despite the previous decision by this court in *Monaghan* and despite an opinion by the Oregon Attorney General that his employment as a teacher by a state-funded college violated Article III, § 1, as construed in *Monaghan,* Judge Sawyer took the position at the hearing before the Commission on Judicial Fitness on August 26, 1978, that "until the Supreme Court makes such a determination, there is clearly no violation of the Constitution." He also stated at that hearing that he had been offered another contract for teaching at that school to begin in October 1978 and that he intended to accept that contract "barring some order to the contrary."

Under these facts, we believe that the Commission had jurisdiction to bring a proceeding "to inquire into the conduct of the judge," as provided by ORS 1.420, for the purpose of determining whether or not such conduct violated the Oregon Constitution and, if it did, for an order of this court requiring Judge Sawyer to cease that continued course of conduct and, if he refused to do so, suspending him from office as a judge for "wilful violation" of Canon 2. If this were not possible, there would be no effective way, at least in cases involving similar facts, in which the Commission could bring proceedings to stop a judge from continuing a course of conduct which violates the Oregon Constitution or laws whenever the judge contends in good faith that such conduct does not violate the Oregon Constitution or laws and despite his expressed intention to continue such conduct unless and until ordered to stop it. We believe that such a result, in a case involving such facts, would be contrary to the purpose intended by the voters of Oregon when, by the adoption of Article VII, § 8 of the Oregon Constitution,

they provided that judges may be removed or suspended from office for wilful violation of any of the rules of judicial conduct adopted by this court.[11]

In other words, in such a case we do not discipline a judge for his past conduct, but impose sanctions to stop the judge from continuing a course of conduct which the judge intends to continue in the absence of an order to the contrary.[12]

Judge Sawyer contends that his conduct did not violate the Code of Judicial Conduct by reason of the provisions of Canons 4A, 5A and 6. Canon 4A provides that a judge:

---

[11] Because this proceeding has some of the characteristics of a suit for a declaratory judgment or for an injunction to enjoin future conduct, rather than to discipline a judge for misconduct, it might possibly have been contended that the Judicial Fitness Commission had no power under ORS 1.420 to bring such a proceeding and that a proceeding under ORS Chapter 27 (submitting controversy without action or suit) or ORS Chapter 28 (declaratory judgments) would have been more appropriate.

Indeed, it appears from the record that the Commission first considered filing an action for a declaratory judgment under ORS Chapter 28, but concluded that it had no power to do so.

It is to be noted, however, that ORS 1.420(1)(a) expressly confers upon the Commission the power to hold a hearing "to inquire into the conduct of the judge." No contention is made in this case that the Commission had no power to bring a proceeding under ORS 1.420 as a means of inquiring into the conduct of Judge Sawyer for the purpose of determining whether it was contrary to the restrictions of Article III, § 1 of the Oregon Constitution and, if so, contrary to Canon 2 of the Code of Judicial Ethics, other than the contentions that (1) the Commission has no jurisdiction because there is nothing in the record to disclose the filing of a complaint by any individual, and (2) the complaint does not allege facts over which the Commission has been granted jurisdiction by Article VII, § 8 of the Oregon Constitution in that the conduct of Judge Sawyer did not violate any Canon of the Code of Judicial Conduct. Neither of these contentions challenges the power of the Commission to proceed in this case under ORS 1.420 provided, as we hold in this case, that there was a sufficient complaint for the purpose of this case and that the alleged conduct of Judge Sawyer violated both Article VII, § 8 of the Oregon Constitution and Canon 2A of the Code of Judicial Ethics.

[12] Because of the basis on which we decide this case, we need not consider whether, as also contended by the Commission, by reason of the provisions of Article III, § 1 of the Oregon Constitution, the conduct of Judge Sawyer was also a violation of Canon 5G of the Code of Judicial Conduct, which provides that:

"A judge should not accept appointment to a governmental committee, commission, or other position that conflicts with his or her judicial functions. * * *"

[383]

"* * * may speak, write, lecture, teach, and partici-
pate in other activities concerning the law, the legal
system, and the administration of justice."

Canon 5A provides that:

"A judge may write, lecture, teach, and speak on
non-legal subjects, and engage in the arts, sports, and
other social and recreational activities, if such avoca-
tional activities do not detract from the dignity of his
office or interfere with the performance of his judi-
cial duties."

Canon 6 provides that a judge may receive compensa-
tion for extrajudicial activities permitted by the Code.

■ It is noted that the teaching activities by a judge
permitted by Canon 5A are subject to the express
condition that they do not "interfere with the perform-
ance of his judicial duties." Regardless, however, of
whether teaching activities may be considered as in-
terfering with the performance by an Oregon judge of
his judicial duties *in the absence of* the provisions of
Article III, § 1 of the Oregon Constitution, we believe
and hold that these Canons do not and cannot override
those express provisions of the Oregon Constitution
which we have held to forbid a judge from engaging in
employment as a regular part-time teacher for com-
pensation at a state-funded college.

For these reasons, we hold, in accordance with the
recommendation of the Oregon Judicial Fitness Com-
mission, that in the event Judge Sawyer does not
resign from his present teaching position and cease
any and all further conduct in that capacity, then and
in such an event Judge Sawyer shall be suspended
from his office as circuit judge during any time that he
is regularly employed as a part-time teacher for com-
pensation at any state-funded college.

LINDE, J., dissenting.

I regret to say that I cannot agree to the Court's
decision in this case. The opinion undertakes to give
the Commission on Judicial Fitness and Judge Sawyer

[384]

an answer to the question whether the Oregon constitution precludes a judge's part-time teaching at a state college. In order to provide that answer, the opinion does violence to the provisions of law governing the commission and this court in judicial disciplinary proceedings. It gives wrong answers to some very important questions for the sake of reaching a relatively trivial one that could well await another day and a more appropriate procedure. Accordingly, I dissent.

The constitutional authority for the present proceedings in this court is stated in article VII (amended), section 8 as follows:

(1) In the manner provided by law, and notwithstanding section 1 of this Article, a judge of any court may be removed or suspended from his judicial office by the Supreme Court, or censured by the Supreme Court, for:

(a) Conviction in a court of this or any other state, or of the United States, of a crime punishable as a felony or a crime involving moral turpitude; or

(b) Wilful misconduct in a judicial office where such misconduct bears a demonstrable relationship to the effective performance of judicial duties; or

(c) Wilful or persistent failure to perform judicial duties; or

(d) Generally incompetent performance of judicial duties; or

(e) Wilful violation of any rule of judicial conduct as shall be established by the Supreme Court; or

(f) Habitual drunkenness or illegal use of narcotic or dangerous drugs.

(2) Notwithstanding section 6 of this Article, the methods provided in this section, section 1a of this Article and in section 18, Article II of this Constitution, are the exclusive methods of the removal, suspension, or censure of a judge.

As this text makes obvious, the constitution was amended to give this court the exceptional authority to remove a judge from office, or to impose other discipline, for grave derelictions. Nothing in section 8

suggests that it provides a proceeding in this court for exercising general supervisory or advisory powers over other courts.

Almost all of the several grounds for removal, suspension, or censure listed in (a) - (f), above, relate to a judge's wilful or incompetent conduct in relation to his *judicial* duties. The exceptions are conviction of a felony or a crime involving moral turpitude and abuse of intoxicants or drugs. Before a judge's conduct can be the subject of adverse action by this court under article VII (amended), section 8, the charge must fall under one of the listed grounds. The law that establishes the Commission on Judicial Fitness and the procedures for carrying out this constitutional mandate, ORS 1.410-1.480, is similarly circumscribed. The kind of judicial conduct into which the commission is directed to inquire is conduct of a kind that "justifies censure, suspension or removal from office" and that may lead it to recommend such action to this court. ORS 1.420(4). The entire procedure before the commission and the court is designed with a view to dealing with serious charges of misconduct that may actually lead to the exercise of this grave and exceptional authority. It is consistent with this assignment that the commission may act only "[u]pon complaint from any person concerning the conduct of a judge or upon request of the Supreme Court," ORS 1.420(1).

The provision relied on in this case is section 8(1)(e): "Wilful violation of any rule of judicial conduct as shall be established by the Supreme Court." This, in turn, leads the court to invoke Canon 2A of the Code of Judicial Conduct:

> A judge should avoid impropriety and the appearance of impropriety in all of his activities.
> A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
> . . . .

In short, because Judge Sawyer teaches one part-time class about law at Southern Oregon College, he is charged and faced with possible suspension or worse on the constitutional ground of "[w]ilful violation of any rule of judicial conduct . . . established by the Supreme Court" because this court has adopted a canon that instructs judges in general terms to "respect and comply with the law," and because a judge teaching in a state college arguably mixes the functions of two separate branches of government.

This chain of premises discloses a serious problem. The Court recognizes that Canon 2 is very broadly stated and primarily hortatory. That may be suitable for a code of conduct designed for hortatory effect only. But Article VII (amended), section 8(1)(e), *supra,* in effect has given this court farreaching power to legislate for other judges in the form of rules of judicial conduct, enforceable by potential removal from office by the judgment of the same body that made the rule.[1] That is a power to be used only with scrupulous care in stating the rules and attention to their literal implications.

Certainly an exhortation to "avoid impropriety and the appearance of impropriety" falls short as a standard for subjecting other judges to removal by this court. An exhortation to a judge to "respect and comply with the law" has more meaning, but not much more. As a statement of a judge's professional duty it is a truism. As a ground for removing a judge from office, and extended beyond his professional duties, the truism becomes problematic. It is no answer that the rule is not to be taken literally, or to say, as the Court does, that violations of law such as traffic infractions may not come within the intended meaning of Canon 2A. The *per curiam* opinion offers no criterion to decide for what departures from law this court will or will not find removal, suspension or censure "appropriate," *supra,* p. 831. I cannot believe that either the

---

[1] It is, perhaps, not without irony that the present charge against Judge Sawyer concerns the separation of powers.

provision of section 8(1)(e) providing penalties for the "wilful violation of any rule of judicial conduct" nor the rules adopted by this court to carry out that mandate contemplate such penalties for the kind of issue presented in this case.

The vagueness of Canon 2 as a standard for discipline in turn highlights the question how procedures before the commission are initiated, specifically the role of the "complaint from any person" or "request of the Supreme Court" required by ORS 1.420. I agree that the complaint may come from a member of the comisssion or its staff. I do not agree that it can be dispensed with entirely in the manner that the Court seems willing to overlook in order to reach the result in this case.[2] If the commission may legally initiate an inquiry and eventual disciplinary proceeding under a standard like Canon 2, without any complaint or request from this court as required by ORS 1.420, it in effect has a roving commission to check generally into the conduct of all judges. That may or may not be a good idea, but it is not what ORS 1.420 enacted. The presence of a complaint at least represents some safeguard that someone will take responsibility for putting on record both the exact factual allegations concerning the judge's conduct and the reasons why, if true, they rise to the level of calling for disciplinary action under the applicable law. If that had not been intended, the words "Upon [t]he complaint from any person . . . or upon request of the Supreme Court" could easily have been omitted from the statute. But the *per curiam* opinion would reduce this safeguard from the "complaint" required by ORS 1.420 to "information coming from any [unidentified] person."

Nor is it necessarily true that careful adherence to the substance and procedure governing our disciplinary powers would make it impossible ever to decide a

---

[2] The issue tends only to be obscured by discussion in terms of "jurisdiction" and "due process," as used in respondent's brief and in the opinion; it is simply a question of compliance with ORS 1.420. *Cf. Anaconda Co. v. Dept. of Rev.,* 278 Or 723, 565 P2d 1084 (1977).

question such as that which the Court strains to reach in this case. I need not pursue here hypothetical ways in which the issue could be raised, if the objective of those who raise it, or of Judge Sayer, is clarification rather than Judge Sawyer's "removal, suspension or censure." But on its face, article VII (amended), section 8 was not designed as a means of issuing declaratory directives for judicial conduct that does not merit such discipline.

In sum, whatever may be the merits of the dispute over Judge Sawyer's teaching at Southern Oregon College, I think his doing so is not the kind of judicial misconduct that properly comes within our disciplinary rules. Nor has the commission brought it before us by proper procedures. The proper administration of those rules and procedures are a far weightier matter than the particular issue of Judge Sawyer's teaching. Accordingly, I would dismiss this disciplinary proceeding.