366 S.E.2d 631

**In the Matter of Dennie VANDELINDE.**

No. 17748.

Supreme Court of Appeals of
West Virginia.

Feb. 11, 1988.

Boyce Griffith, Hamlin, for Dennie M. Vandelinde.

Charles R. Garten, Charleston, for the Judicial Investigation Com. of West Virginia.

MILLER, Justice.

In this disciplinary proceeding, the Judicial Hearing Board (Board) recommends dismissal of a complaint charging Dennie Vandelinde, a Lincoln County magistrate, with violations of Canons 2 and 7 of the Judicial Code of Ethics for making political contributions to a county political organization. Our prior decisions make it clear that we must make an independent, *de novo* review of the facts to determine whether clear and convincing evidence of improper judicial conduct has been presented, as we indicated in Syllabus Point 1 of *West Virginia Judicial Inquiry Comm'n v. Dostert*, 165 W.Va. 233, 271 S.E.2d 427 (1980): "The Supreme Court of Appeals will make an independent evaluation of the record and recommendations of the Judicial [Hearing] Board in disciplinary proceedings." *See also Matter of Wharton*, 175 W.Va. 348, 332 S.E.2d 650 (1985); *In Re Pauley*, 173 W.Va. 228, 314 S.E.2d 391 (1983).

## I.

On April 23, 1987, the case was submitted to the Board for decision on the pleadings and a stipulation of facts. This stipulation, which was subsequently adopted by the Board as a part of its findings of fact, indicates that the respondent ran for reelection as a magistrate in Lincoln County in 1984. Financial statements he filed with the West Virginia Secretary of State's office show that he made two expenditures to the "United Democrats of Lincoln County, West Virginia." A $500 contribution was made on April 2, 1984, followed by a $5,000 contribution on May 18, 1984.[1]

According to the stipulation, this organization had offices located in the town of Hamlin, Lincoln County, and sponsored rallies throughout the county at which campaign promotional material was distributed and free refreshments were provided. Copies of this literature were not made a part of the record, but it appears that the respondent's name was placed on a list of candidates supported by the campaign organization. The campaign organization employed clerical help in the campaign office, and candidates affiliated with the organization agreed to contribute funds to cover the organization's expenses. It was also stipulated that these expenses were believed to be lawful election expenses under the provisions of W.Va.Code, 3–8–9 (1980).[2]

1. From the financial filing statement required under W.Va.Code, 3–8–5 and 3–8–5a, it appears that Mr. Vandelinde did not utilize a financial agent or treasurer. His form shows that he raised no outside funds and, therefore, the personal solicitation provisions of Canon 7B(2) are not involved. This canon provides:

   "A candidate, including an incumbent judge, for a judicial office that is to be filled by public election between competing candidates should not himself solicit or accept campaign funds, or solicit publicly stated support, but he may establish committees of responsible persons to secure and manage the expenditures of funds for his campaign...."

   The Board's opinion makes no express finding on whether a judge who does not solicit under Canon 7B(2) can expend his own funds without utilizing a committee, treasurer, or financial agent. We conclude that this is permitted, but such candidate would still be required to file a financial statement under W.Va.Code, 3–8–5, as did Magistrate Vandelinde. *See* Syllabus Point

10, *State ex rel. Cohen v. Manchin*, 175 W.Va. 525, 336 S.E.2d 171 (1984).

The Board in its summary conclusion states: "Canon 7 expressly allows a candidate's committee to act much like the United Democrats of Lincoln County, West Virginia, acted in behalf of Magistrate Vandelinde." We find this to be an incorrect statement of the scope of Canon 7, at least insofar as it would authorize a judge's campaign committee to itself endorse other candidates.

2. W.Va.Code, 3–8–9 (1980), specifies eleven categories of lawful election expenses, which for the sake of brevity are summarized as follows: (1) renting and furnishing of offices and paying office personnel; (2) if a headquarters is not maintained, reasonable office expenses including clerks and typists; (3) printing campaign material and radio and television broadcasting; (4) renting space for public meetings and attendant expenses; (5) travel for candidates and their staff and for stationery, postage, telephone, and related expenses; (6) obtaining peti-

Before the involved contributions were made, Larry Z. Adkins, Clerk of the County Commission of Lincoln County and chief elections officer for the county, communicated with the Secretary of State's office and was advised that candidates could lawfully make a contribution in any amount to a political organization. This information was given to the respondent before the contributions were made. It was also stipulated that the respondent has not been criminally charged with a violation of W.Va.Code, 3–8–12(f),[3] for making a political contribution in excess of $1,000.[4]

The Board concluded that the respondent, having relied upon the advice of the county's chief election officer, had not intentionally and knowingly violated W.Va. Code, 3–8–12(f), which makes it a misdemeanor to directly or indirectly make a contribution in excess of $1,000 to any campaign for an elective office in this State. The Board further determined that his good faith reliance served to avoid any appearance of impropriety violative of the Judicial Code of Ethics. The Hearing Board recommended, by a four to two vote, that the disciplinary complaint be dismissed.

## II.

### A.

■ We consider first whether the respondent violated Canon 2A, which specifically requires a judge to "respect and comply with the law." Canon 2A also contains a more general admonition that a judge should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.[5] Courts are in general agreement that conduct by a judge which violates federal or state criminal law may, unless the violation is trivial, constitute a violation of the requirement that a judge must comply with the law found in Canon 2A.[6] *E.g., In*

---

tions for nominating candidates; (7) examining and copying lists of registered voters; (8) conveying voters to the polls; (9) securing publication in newspapers and on radio and television of articles and speeches; (10) conducting public opinion polls; (11) legitimate advertising services authorized in items 3, 4, 5, 6, 7, 9, and 10, *supra.*

3. W.Va.Code, 3–8–12(f), provides in material part:

"*No person shall, directly or indirectly, make any contribution* in excess of the value of one thousand dollars in connection with any campaign for nomination or election to or on behalf of any statewide or national elective office, or *in excess of the value of one thousand dollars,* in connection with any other campaign for nomination or election to or on behalf of any other elective office in the State or any of its subdivisions, or in connection with or on behalf of any committee *or other organization or person engaging in furthering, advancing or advocating the nomination or election of any candidate for any such office.*" (Emphasis added).

This provision creates a misdemeanor offense punishable by a fine of not more than $1,000 or confinement in jail for not more than one year, or both fine and imprisonment.

W.Va.Code, 3–8–12(f), was amended in 1978. *See* 1978 W.Va. Acts ch. 43. The main change was to drop the contribution limit from $5,000 to $1,000. Prior to the 1978 amendment, W.Va. Code, 3–8–12(f), was as follows:

"No person shall, directly or indirectly, make any contribution in excess of the value of five thousand dollars in connection with any campaign for nomination or election to or on behalf of any elective office in the State or any of its subdivisions, or in connection with or on behalf of any committee or other organization or person engaged in furthering, advancing or advocating the nomination or election of any candidate for any such office[.]"

4. The lack of criminal prosecution on the underlying facts does not foreclose disciplinary action under the Judicial Code of Ethics. *E.g., Matter of Killam,* 388 Mass. 619, 447 N.E.2d 1233 (1983); *In Re Roth,* 293 Or. 179, 645 P.2d 1064 (1982).

5. Canon 2A states: "A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities—A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

6. The term "trivial" is difficult to define, as indicated by this passage from *In the Matter of Sawyer,* 286 Or. 369, 381, 594 P.2d 805, 811 (1979) (In Banc):

"We recognize that some 'violations of law' (such as minor traffic infractions) may be of such a nature as to not come within the intended meaning of Canon 2A. We also recognize that there may be cases in which a judge may engage in conduct in the good faith belief

*re Alsip,* 499 N.E.2d 1102 (Ind.1986); *In re Soileau,* 502 So.2d 1083 (La.1987); *In re Killam,* 388 Mass. 619, 447 N.E.2d 1233 (1983); *In re Duncan,* 541 S.W.2d 564 (Mo. 1976); *In re Roth,* 293 Or. 179, 645 P.2d 1064 (1982) (In Banc); *In the Matter of Sawyer,* 286 Or. 369, 594 P.2d 805 (1979) (In Banc).

We reached the same conclusion in *Dostert, supra,* where a judge who had violated our gun licensing statute, W.Va.Code, 61–7–2, was also found to be in violation of Canon 2A. *See also In the Matter of Gorby,* 176 W.Va. 11, 339 S.E.2d 697 (1985) (magistrate involved in altercation resulting in misdemeanor warrants issued against him).

We have also recognized a similar rule by holding that if a magistrate deliberately fails to follow mandatory criminal procedures, there is a violation of the Canon 2 A requirement to respect and follow the law. *Matter of Wharton, supra; In Re Markle,* 174 W.Va. 550, 328 S.E.2d 157 (1984); *In Re Pauley, supra.*

The Board's opinion does not address what the relationship is, if any, between the lawful campaign expenditures set out in W.Va.Code, 3–8–9, and the maximum political contribution authorized by W.Va. Code, 3–8–12(f). It is obvious, however, that if the contribution in this case fell under W.Va.Code, 3–8–9, there would be no violation since there is no limit on the amount of expenditures under this section. There is, however, no language in this section authorizing an expenditure or contribution to a political organization which is involved in supporting candidates.[7]

Furthermore, there is a distinction between a contribution and an expense or expenditure which can be drawn from our election statutes. The term "contribution" is broadly defined in W.Va.Code, 3–8–5c, and contemplates the transfer of something of value for the purpose of influencing the election.[8] Thus, a contribution viewed from the candidate's or his campaign committee's perspective is the receipt of something of value. On the other hand, an expenditure is something that is paid out for those lawful election expenses delineated in W.Va.Code, 3–8–9. Here the payment by Magistrate Vandelinde was a contribution to an organization to help it influence his and other candidates' election.

■ Even aside from the distinction between contributions and expenditures, we are persuaded by the specific language of W.Va.Code, 3–8–12(f), which is designed to fit this precise situation. It specifically places a $1,000 limit on contributions to a "committee or other organization or person engaging in furthering, advancing or advocating the nomination or election of any candidate."[9] This language must be deemed to control over any general language. Traditional rules of statutory construction require, as we explained in Syllabus Point 2 of *State ex rel. Myers v. Wood,* 154 W.Va. 431, 175 S.E.2d 637 (1970), that:

> "A specific section of a statute controls over a general section of the statute."

*See also* Syllabus Point 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325

---

that such conduct does not violate the law when, in fact, such conduct does violate the law. In such cases, depending on the facts, discipline by removal, suspension or censure may not be appropriate."

**7.** *See* note 2 for a summary of W.Va.Code, 3–8–9.

**8.** W.Va.Code, 3–8–5c, provides:

"The term 'contribution,' as used in this article, shall mean a gift subscription, assessment, payment for services, dues, advance, donation, pledge, contract, agreement, forbearance or promise of money or other tangible thing of value, whether or not conditional

or legally enforceable, or a transfer of money or other tangible thing of value to a person, made for the purpose of influencing the nomination, election or defeat of a candidate, or for the passage or defeat of any issue, thing or item to be voted upon. An offer or tender of a contribution is not a contribution if expressly and unconditionally rejected or returned. A contribution does not include volunteer personal services provided without compensation."

**9.** *See* note 3, *supra,* for the full text of W.Va. Code, 3–8–12(f). We note that a candidate may make a contribution in excess of one thousand dollars to his own committee which is exclusively devoted to his campaign.

S.E.2d 120 (1984); *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983).

■ Thus, we conclude that in the absence of any specific language in W.Va. Code, 3–8–9, authorizing expenditures to a person, committee, or organization engaged in advocating the election of a candidate, the payment of funds to such person, committee, or organization is controlled by W.Va.Code, 3–8–12(f), and is subject to a maximum limit of $1,000.

### B.

Although not addressed by the Board, we recognize First Amendment free speech and association principles may be implicated where statutory constraints are placed on political expenditures and contributions. The seminal case is *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), which essentially upheld as constitutional federal statutory limitations on contributions to candidates. In particular, the $1,000 limit per candidate per election for contributions by an individual was upheld. This would include an individual's campaign committee.[10] It struck down as unconstitutional limitations on independent expenditures by candidates.

A more analogous case is *California Medical Ass'n v. Federal Election Comm'n*, 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981), where the Supreme Court upheld the constitutionality of a provision in the Federal Election Campaign Act, 2 U.S.C. § 431, *et seq.*, that placed a $5,000 limitation per year on contributions by persons or associations to any multicandidate political committee. In determining this limit to be valid, the Supreme Court stated:

"Our decision in *Buckley* precludes any argument to the contrary. In that case, the limitations on the amount individuals could contribute to candidates and campaign organizations were challenged on the ground that they limited the ability of the contributor to express his political views, albeit through the speech of another. The Court, in dismissing the claim, noted:

'While contributions may result in political expression if spent by a candidate or an association to present views to the voters, the transformation of contributions into political debate *involves speech by someone other than the contributor.*' 424 U.S., [1,] 21, 46 L.Ed.2d 659, [689,] 96 S.Ct. 612 [, 635 (1976) ] (emphasis added).

This analysis controls the instant case. If the First Amendment rights of a contributor are not infringed by limitations on the amount he may contribute to a campaign organization which advocates the views and candidacy of a particular candidate, the rights of a contributor are similarly not impaired by limits on the amount he may give to a multicandidate political committee, such as CALPAC, which advocates the views and candidacies of a number of candidates." 453 U.S. at 197, 101 S.Ct. at 2722, 69 L.Ed.2d at 580. (Footnote omitted).

■ Here the limitation is not on a candidate's direct expenditures for his own campaign, but is a limitation on the speech by someone other than the contributor, i.e., the political organization that is supporting him as well as other candidates. There is no dispute under the stipulation of facts that the organization to whom the $5,000 contribution was made was supporting other candidates. Consequently, we conclude that W.Va.Code, 3–8–12(f), which places a $1,000 limit on contributions to a committee

---

**10.** It is clear from the Federal Election Campaign Act of 1971, which was analyzed in *Buckley*, that its features preempt state campaign spending statutes insofar as they relate to federal elections within a state. 2 U.S.C. § 453 provides: "The provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office." Most states have applied *Buckley*'s First Amendment analysis to their election spending statutes governing purely state candidates. *E.g., Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2–10),* 396 Mich. 465, 242 N.W.2d 3 (1976); *Citizens for Jobs & Energy v. Fair Political Practices Comm'n,* 16 Cal.3d 671, 129 Cal.Rptr. 106, 547 P.2d 1386 (1976); *Labor's Educational & Political Club Independent v. Danforth,* 561 S.W.2d 339 (Mo.1977); *see generally* Annot., 94 A.L.R.3d 944 (1979).

or organization supporting a candidate, does not violate the First Amendment rights of free speech and association.[11]

### III.

A final issue remains as to the effect of the advice given by the Secretary of State's office that there was no limit on the amount a candidate could contribute to an organization supporting various candidates.

It is unfortunate that the case was allowed to be submitted on a joint factual stipulation because the stipulation did not contain all the relevant facts surrounding the legal issues involved in the case. There was attached to the factual stipulation an affidavit by Larry Z. Adkins, who was the Clerk of the Lincoln County Commission, which set out some of the facts surrounding his telephone call to the Secretary of State's office.[12] It should be noted that a copy of the Secretary of State's memorandum referred to in Mr. Adkins' affidavit was not made a part of the record nor was there any attempt in the affidavit to set out the reason why the Secretary of State's

representative concluded that the $1,000 spending limit under W.Va.Code, 3–8–12(f), was not applicable.

There are obvious problems with a defense based upon reliance on oral statements of a public official. First, it is apparent that such a rule would permit a person who obtains advice from a public official to utilize that advice as a defense against a violation of a statute. This would give such public official the power to contravene legislative enactments.

There is a general rule of law that prohibits a public official from contravening a statute which is unambiguous, which we discussed at some length in *City of Fairmont v. Hawkins*, 172 W.Va. 240, 304 S.E.2d 824 (1983), and concluded in Syllabus Point 4 as follows: "Where a specific statute or ordinance exists prescribing how official acts should be done, the statutory mandate may not be circumvented by permitting the public official to show that in the past the required statutory procedure has been ignored." [13]

---

11. Counsel for the Judicial Investigation Commission also relies upon Canon 7A(2), which deals with campaign conduct in general and cases that hold generally that, under this canon, a judge's campaign conduct must also comport with state election law. We acknowledge the validity of this statement, but because we have settled this issue under Canon 2A's language requiring compliance with the law, we see no reason to address it again under Canon 7A(2). An additional question is whether the provisions of Canon 7A(2) place a further restriction on contributions to organizations supporting multiple candidates. The particular language of this Canon is: "A judge may attend political gatherings, speak to such gatherings on subjects permitted under Canon 4A, identify himself as a member of a political party, and contribute to a political party or political organization recognized by law." Magistrate Vandelinde was not charged under this provision. Whether the organization to which he contributed would be one authorized under this Canon is a difficult issue. It is not a political party as defined in W.Va.Code, 3–1–8, or W.Va.Code, 3–1–13. In view of the fact that this issue was not raised below, we decline to decide it.

12. The relevant portion of the affidavit provides:

"[T]hat as County Clerk he was involved in all the administrative and legal functions relating to said elections; that he was an officer of a

campaign organization known as the United Democrats for Lincoln County; that the legality of making contributions thereto arose; that he contacted John Pratt, Deputy Secretary of the State for A. James Manchin, then Secretary of State and Ex officio Chief Election Officer in the State of West Virginia; that Mr. Pratt informed him that contributions did not apply to candidates; that candidates could make expenditures in any amount and that he had issued a memorandum of authority; that he in turn advised all persons depositing money with the United Democrats they were not in violation of any election law; that the money deposited was issued to discharge the expenses of the United Democrats organization."

13. In *Hawkins*, we traced this rule to our earlier case of *State v. Chilton*, 49 W.Va. 453, 39 S.E. 612 (1901), and cited these additional authorities. *State v. Conley*, 118 W.Va. 508, 190 S.E. 908 (1937); *Beneficial Finance Co. of Landover v. Administrator of Loan Laws*, 260 Md. 430, 272 A.2d 649 (1971); *State v. Guy*, 196 Neb. 308, 242 N.W.2d 864 (1976); *Schumacher v. State*, 78 Nev. 167, 370 P.2d 209 (1962); *International Harvester Co. v. Town of Ellery*, 28 A.D.2d 1081, 285 N.Y.S.2d 104 (1967); Annot., 65 A.L.R. 811 (1930). We also acknowledged in note 6 of *Hawkins*, 172 W.Va. at 245, 304 S.E.2d at 829, that if a statute was susceptible of two reasonable constructions, then a longstanding interpretation by the official charged with administer-

This law bears more directly on the liability of the public official who fails to follow the clear command of a statute. Here we deal with third-party reliance on advice from a public official. We have indicated in *State v. Wassick*, 156 W.Va. 128, 191 S.E.2d 283 (1972), that reliance on an Attorney General's opinion issued pursuant to his authority under W.Va.Code, 5-3-1, was unavailing on a pinball machine gambling conviction. This was because such opinions are not considered precedents to be followed by this Court.

The defense of a good faith reliance on the advice of a public official bears some analogy to the defense of reliance upon the advice of counsel. We discussed this in *Powers v. Goodwin*, 174 W.Va. 287, 324 S.E.2d 701 (1984), where we concluded that as a general rule, "reliance on advice of counsel is not an absolute defense to charges that a person is acting unlawfully or negligently." Syllabus Point 3, in part.[14]

We also pointed out in *Powers* that in order to assert this defense, it must be shown that there was "a complete disclosure of the facts ... of the contemplated action" and a reliance "upon the advice in good faith." 174 W.Va. at 291, 324 S.E.2d at 705. (Footnote omitted). As to the good faith reliance, we indicated in note 8 of *Powers*, 174 W.Va. at 291, 324 S.E.2d at

705, that "some courts have held that the advice must not be so patently erroneous as to be unacceptable to a reasonably prudent person."

These general principles are designed to enhance the obviously sound public policy of preventing officials from giving advice that will enable a person to ignore the plain requirements of a statute.[15] Of course, this public policy rule can be altered by legislative enactments and these can be found in the election law area.

Under 2 U.S.C.S. § 437f(C)(2), the Federal Election Commission is authorized to issue advisory opinions. This section specifically provides that when the advisory opinion is issued and relied upon in good faith, it precludes any sanctions authorized by the Federal Election Campaign Act. It should be noted that our election law does not provide a similar mechanism.[16] *See also Thirteen Committee v. Weinreb*, 168 Cal.App.3d 528, 214 Cal.Rptr. 297 (1985) (statute authorizes good faith reliance on election commission advisory opinion); *James v. Rogers*, 734 P.2d 1298 (Okl.1987) (statute authorizes declaration of candidacy to be amended).[17]

There is no need for purposes of this case to survey the outer limits of the defense of a good faith reliance on advice of a public official. It is sufficient from the foregoing law to state that where a

---

ing the statute is entitled to considerable weight. Here we do not believe that the $1,000 limit in W.Va.Code, 3-8-12(f), can be considered ambiguous.

**14.** The entire Syllabus Point 3 of *Powers* provides: "Except for malicious prosecution suits, it is generally held that reliance on advice of counsel is not an absolute defense to charges that a person is acting unlawfully or negligently."

**15.** In a related vein, we have concluded that a public official may not by legally unauthorized acts bind the agency for which he works, as indicated by Syllabus Point 2 of *West Virginia Public Employees Ins. Bd. v. Blue Cross Hospital Serv., Inc.*, 174 W.Va. 605, 328 S.E.2d 356 (1985): "A state or one of its political subdivisions is not bound by the legally unauthorized acts of its officers and all persons must take note of the legal limitations upon their power and authority. *Cunningham v. County Court of*

*Wood County*, 148 W.Va. 303, 310, 134 S.E.2d 725, 729 (1964)."

**16.** As a part of the authority granted to the Judicial Investigation Commission, it can issue advance advisory opinions on ethical questions to a judge. Rule II(K), 1987 Michie's Court Rules, at 315.

**17.** It also appears to be generally recognized that where an election official announces a later filing date than authorized by statute or erroneously accepts a filing petition as being sufficiently complete, the candidate can rely on the public official's mistake as a defense. *E.g., Thirteen Committee v. Weinreb, supra; State ex rel. Huse v. Haden*, 349 Mo. 982, 163 S.W.2d 946 (1942); *State ex rel. Englert v. Meier*, 115 N.W.2d 574 (N.D.1962); *State ex rel. Mihlbaugh v. Bogart*, 73 Ohio App. 47, 53 N.E.2d 75 (1943); *In re Welsh*, 458 Pa. 645, 327 A.2d 6 (1974); *Clegg v. Bennion*, 122 Utah 188, 247 P.2d 614 (1952); *Ryshpan v. Cashman*, 132 Vt. 628, 326 A.2d 169 (1974); *Donohoe v. Shearer*, 53 Wash.2d 27, 330 P.2d 316 (1958).

**190**

statute is clear and unambiguous, the oral advice of a public official cannot contravene the plain meaning of such statute.

We do not mean to imply that a good faith reliance on a public official's advice cannot be considered in this case. Even where good faith reliance does not constitute a defense, it can be used as a mitigating factor in determining the appropriate disposition of a disciplinary proceeding. *E.g., In Re Hanson,* 532 P.2d 303, 316 (Alaska 1975); *Spruance v. Commission on Judicial Qualifications,* 13 Cal.3d 778, 119 Cal.Rptr. 841, 532 P.2d 1209 (1975); *In Re Kelly,* 225 Neb. 583, 407 N.W.2d 182 (1987); *In Re Douglas,* 135 Vt. 585, 382 A.2d 215 (1977).

In the present case, we believe there exist suitable reasons for mitigation. The statute, while not ambiguous on its face, had not been interpreted by any court to determine if it violated First Amendment principles set out in *Buckley* and its progeny. We, therefore, conclude that under the circumstances, a public reprimand is an appropriate discipline.

Public Reprimand.

BROTHERTON, J., deeming himself disqualified, did not participate in the consideration or decision of this case.