Argued and submitted April 6, accused censured June 2, 1982

# In re Complaint as to the Conduct of
# THE HONORABLE PHILLIP J. ROTH,
*Accused.*

## (No. 9, SC 28223)
645 P2d 1064

Jack L. Kennedy, Portland, argued the cause for the accused. With him on the briefs were Kennedy, King & McClurg, Portland.

Michael C. McClinton, Salem, argued the cause for the Commission on Judicial Fitness. With him on the brief were Clark, Marsh, Lindauer, McClinton & Vollmar, Salem.

PER CURIAM.

## PER CURIAM

. This is a proceeding pursuant to ORS 1.420 and 1.430 and Article VII, (Amended), Section 8 of the Oregon Constitution to inquire into the conduct of a circuit court judge. The Commission on Judicial Fitness found, after a hearing, that Judge Phillip J. Roth had willfully violated a canon of the Code of Judicial Conduct and recommended to this court that Judge Roth be censured. ORS 1.420 provides in part:

"(1) Upon complaint from any person concerning the conduct of a judge or upon request of the Supreme Court, and after such investigation as the Commission on Judicial Fitness considers necessary, the commission may:

"(a) Hold a hearing pursuant to subsection (2) of this section, to inquire into the conduct of the judge; or

"* * * * *

"(4) If, after hearing or after considering the record and report of the masters, the commission finds that the conduct of the judge justifies censure, suspension or removal from office, the commission shall recommend to the Supreme Court the censure or suspension or removal of the judge.

"* * * * *"

ORS 1.430 provides in part:

"(1) The Supreme Court shall review the record of the proceedings under ORS 1.420 on the law and facts and may receive additional evidence. The Supreme Court may cen- , sure the judge or it may order the judge suspended or removed from office."

The permissible grounds for discipline of a judge by this court are found at Article VII, (Amended), Section 8(1) of the Oregon Constitution, as amended effective June 24, 1976:

"In the manner provided by law, and notwithstanding section 1 of this Article, a judge of any court may be removed or suspended from his judicial office by the Supreme Court, or censured by the Supreme Court, for:

"(a) Conviction in a court of this or any other state, or of the United States, of a crime punishable as a felony or a crime involving moral turpitude; or

"(b)  Wilful misconduct in a judicial office where such misconduct bears a demonstrable relationship to the effective performance of judicial duties; or

"(c)  Wilful or persistent failure to perform judicial duties; or

"(d)  Generally incompetent performance of judicial duties; or

"(e)  Wilful violation of any rule of judicial conduct as shall be established by the Supreme Court; or

"(f)  Habitual drunkenness or illegal use of narcotic or dangerous drugs."

The basis of the commission's recommendation was that Judge Roth was guilty of a wilful violation of a rule of judicial conduct established by the Supreme Court, specifically Canon 2A of the Code of Judicial Conduct adopted by this court March 11, 1975. Canon 2A provides:

"A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Judge Roth admitted the following facts and the commission found them to be true:

"FINDINGS OF FACT

"Counsel for the Commission and counsel for Judge Roth having stipulated to certain facts (Commission Exhibit A), the Commission finds, by clear and convincing evidence, the following facts:

"1.  Judge Phillip J. Roth is a Judge of the Circuit Court of the state of Oregon for the County of Multnomah and continuously served in such position since January 3, 1965.

"2.  No complaints regarding Phillip J. Roth have ever been the subject of any prior proceedings before this Commission.

"3.  An official complaint regarding Judge Phillip J. Roth has been filed with the Commission. Judge Roth has been notified of that fact and has been advised of his rights pertaining thereto.

"4.  On and prior to February 12, 1981 Judge Roth was estranged from his wife Alison Blake Ramsey Roth.

"5.  On or about February 12, 1981 one Mark Allen and Judge Roth's wife were together in Mr. Allen's

automobile. Judge Roth struck said automobile and caused some damage to the automobile, and Mark Allen sustained lacerations from broken window glass. Judge Roth also slapped his estranged wife, which did not result in any injury to his estranged wife.

"6.    Thereafter Mark Allen filed a misdemeanor charge of recklessly endangering another person and Alison Blake Ramsey Roth filed a misdemeanor charge of assault IV against Judge Roth.

"7.    Prior to any judicial proceedings regarding the charges filed against Judge Phillip J. Roth, Alison Blake Ramsey Roth, Mark Allen, and Judge Roth entered into a civil compromise whereby a sum of money was paid to complainants,[1] and the charges were dismissed pursuant to ORS 135.703-707.

"8.    Jackson L. Frost, District Attorney for Linn County, Oregon, was appointed as special prosecutor to handle the prosecution of said charges against Judge Roth. If called as a witness Jackson L. Frost would testify that the charges were appropriate, but under the circumstances did not reflect upon the fitness of Judge Roth as a judicial officer.

"9.    Michael D. Schrunk, District Attorney of Multnomah County, Oregon, obtained the services of Jackson L. Frost as a special prosecutor. If called as a witness District Attorney Michael D. Schrunk would testify that he does not feel that the incident reflects on Judge Roth's ability as a jurist.

"10.    The Honorable Charles S. Crookham is the Presiding Judge of the Circuit Court of the State of Oregon for the County of Multnomah and has continuously served as Presiding Judge since July 1, 1978. Judge Crookham is responsible for the supervision and administration of the circuit courts and judges in Multnomah County. If called as a witness Judge Crookham would testify that he does not feel that the incident reflects on Judge Roth's ability as a jurist. He would further testify that Judge Roth has regularly and satisfactorily performed all of his judicial functions and duties as a Judge of the Circuit Court."

Based on the stipulated facts, exhibits, and sworn testimony by Judge Roth, the commission made the following additional findings:

---

[1] Though these are stipulated facts, we note Judge Roth testified before the Commission on Judicial Fitness that a sum of money was paid only to complainant Allen.

"11. The official conduct of the Honorable Phillip J. Roth has been consistent and satisfactory.

"12. The incident under investigation was an isolated occurrence arising out of domestic difficulties, with no likelihood of repetition in the future.

"13. The incident under investigation has not affected and is not likely to affect the ability of the Honorable Phillip J. Roth to perform his judicial duties."

It then concluded:

"As a result of all the findings of fact the Commission has concluded that Judge Roth is guilty of a wilful violation of Canon 2A of the Code of Judicial Conduct adopted by the Supreme Court of the State of Oregon on 11 March 1975."

In his brief and at oral argument before us, Judge Roth makes three arguments against the commission's action: (1) It is constitutionally permissible to discipline a judge only for behavior which affects judicial fitness or ability to perform judicial duties; (2) If discipline for behavior other than that relating to official conduct is permissible, then Canon 2A of the Code of Judicial Conduct is too vague to be enforced, and finally; (3) Before a disciplinary body can find that a judge has failed to "respect and comply with the law" in violation of Canon 2A, it is necessary that the judge have been convicted of the underlying criminal behavior. We discuss these issues in the order we have presented them here.

## IS DISCIPLINE OF A JUDGE CONSTITUTIONALLY LIMITED TO SANCTIONS FOR BEHAVIOR AFFECTING JUDICIAL FITNESS OR ABILITY TO PERFORM JUDICIAL DUTIES?

■ Article VII, (Amended), Section 8 of the Oregon Constitution provides the basis for discipline of a judge by this court. That constitutional provision includes six specific grounds for which a judge may be removed, suspended or censured. Of those six grounds, three deal explicitly with the performance of judicial duties, namely subsections (1)(b), (c) and (d):

"(b) Wilful misconduct in a judicial office where such misconduct bears a demonstrable relationship to the effective performance of judicial duties; or

"(c)  Wilful or persistent failure to perform judicial duties; or

"(d)  Generally incompetent performance of judicial duties."

Subsections (1)(a), relating to conviction of a crime involving moral turpitude and (1)(f), relating to habitual drunkenness or illegal drug use, relate to the moral character of the judge rather than to performance of judicial duties *per se.* [2] Subsection (1)(e), at issue here, makes punishable "[w]ilful violation of any rule of judicial conduct as shall be established by the Supreme Court." We do not interpret the phrase "rule of judicial conduct" as limited to rules governing only the conduct of judges while on the bench. The phrase obviously refers to the Code of Judicial Conduct adopted by this court in 1975. The present code contains seven canons governing judicial behavior, some dealing directly with the conduct of a judge while conducting judicial duties,[3] and some regulating what is clearly off-the-bench behavior in terms of its effect upon judicial duties.[4] There are two canons which might be termed general canons mandating high standards of conduct for judges. These are Canon 1:

"A Judge Should Uphold
the Integrity and
Independence of the Judiciary

"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should

---

[2] *See In the Matter of Sawyer,* 286 Or 369, 386, 594 P2d 805 (1979)(Linde, J. dissenting).

[3] Canon 3, "A Judge Should Perform the Duties of His Office Impartially and Diligently."

[4] Canon 4, "A Judge May Engage in Activities to Improve the Law, the Legal System, and the Administration of Justice" (this canon provides "* * * if in doing so he does not cast doubt on his capacity to decide impartially any issue that may come before him * * *"); Canon 5, "A Judge Should Regulate His Extra-Judicial Activities to Minimize the Risk of Conflict with His Judicial Duties"; Canon 6, "A Judge May Receive Reasonable Compensation and Reimbursement For Extra-Judicial Activity Permitted by This Code" "(* * * if the source of such payments does not give the appearance of influencing the judge in his judicial duties or otherwise give the appearance of impropriety * * *") and, at least arguably, Canon 7, "A Judge Should Refrain from Political Activity Inappropriate to His Judicial Office."

himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective."

and Canon 2, set forth here in its entirety:

"Canon 2

"A Judge Should Avoid
Impropriety and the Appearance of
Impropriety in All His Activities

"A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

"B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness."

The language in Canons 1 and 2 calling upon judges to preserve the "integrity and independence" (Canon 1) or "integrity and impartiality" (Canon 2A) of the judiciary does not lead to the conclusion that only conduct of an official judicial nature is involved. This point is made quite clear by the inclusion in Canon 2A of the phrase "at all times." We noted in *In the Matter of Sawyer, supra,* note 1, at 371, a judicial disciplinary case also involving Canon 2A, that this canon was adopted verbatim as prepared by the American Bar Association (ABA) Special Committee on Standards of Judicial Conduct and adopted by its House of Delegates in August, 1972, and we included the ABA commentary to the canon in our *Sawyer* opinion. That commentary notes that "A Judge must avoid all impropriety and appearance of impropriety. *He must expect to be the subject of constant public scrutiny."* 286 Or at 380. (Emphasis supplied.) The purview of Canon 2A, therefore, is conduct by a judge, on or off the bench, in an official or personal capacity, which has a detrimental effect upon the public's perception of the judiciary. For purposes of Canon 2A the ability of the individual judge to perform his or her official duties is not the decisive issue.

## ARE THE STANDARDS OF CANON 2A
## TOO VAGUE TO BE ENFORCED?

█    In opposition to the commission's conclusion, Judge Roth argues that the second part of Canon 2A, concerning "public confidence in the integrity and impartiality of the judiciary," states a "code of conduct without definite standards" which should be understood to refer only to a judge's activities relating to the performance of judicial duties, because the disciplinary provisions of Article VII, (Amended), Section 8 of the Oregon Constitution are directed only to the proper administration of justice. He maintains that the canon reaches a judge's conduct in his private life only if the conduct affects his ability to perform judicial duties. We note, however, that Canon 2A has two parts. In addition to its general admonition that a judge must conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, Canon 2A specifically requires a judge "to respect and comply with the law." Counsel for Judge Roth and the commission agreed at oral argument that the two clauses of Canon 2A are independent of each other. Counsel for the commission stated the commission's position to be that Judge Roth's behavior violated both sections of Canon 2A; for a violation of the canon to occur it is only necessary to find that a violation of one section or the other.

We find that regardless of whether Judge Roth's behavior was such that it undermined "public confidence in the integrity and impartiality of the judiciary," it amounted to a wilful violation of the first half of the canon relating specifically to compliance with the law. By engaging in behavior which culminated in physical damage to Mr. Allen's automobile, Judge Roth failed to comply with the law of the state of Oregon.[5] Ignoring the ephemeral language in the second half of Canon 2A, described in *Sawyer* as "hortatory," 286 Or at 380, 387, we find Judge Roth's actions were specifically prohibited by the language in Canon 2A requiring a judge "to respect and comply with

---

[5] It is not necessary in this case to reach the question of whether the phrase "respect [for] the law" in Canon 2A implies the inclusion of a lesser degree of wrongdoing than "compl[ying] with the law," or whether these terms are conjunctive.

the law." Certainly every judge of the state of Oregon is on notice that an act in violation of the law is behavior proscribed by the Code of Judicial Conduct. We turn now to the judge's remaining argument.

## DOES A FINDING THAT A JUDGE FAILED TO "RESPECT AND COMPLY WITH THE LAW" REQUIRE A CONVICTION OF AN UNDERLYING CRIMINAL OFFENSE?

■ Judge Roth contends that in order for this court to find that his actions in February, 1981, show a failure to comply with the law, these actions must have resulted in a criminal conviction. Because in this case the misdemeanor charges against Judge Roth were compromised and dismissed, he claims there is no evidence he failed to comply with the law. The canon, on its face, requires conformity to "the law." It is the duty of this court to determine whether a violation of the canon has occurred, whether there has been a proven violation of law or not, regardless of whether criminal charges have been filed. To do so, we review the evidence and make our own independent evaluation. ORS 1.430(1). The standard of proof is by clear and convincing evidence. *In the Matter of Field,* 281 Or 623, 629, 576 P2d 348, *reh denied,* 281 Or 638, 584 P2d 1370 (1978).

The undisputed facts of this case show that Judge Roth struck an automobile belonging to Mark Allen, causing damage to Mr. Allen and to the automobile. In addition, Judge Roth slapped his wife. The commission found this action "did not result in any injury to his estranged wife." The criminal charges initially filed, and then dismissed, were for recklessly endangering another person, ORS 163.195, and assault in the fourth degree, ORS 163.160.

■ In determining whether Judge Roth failed to respect and comply with the law, it is not necessary for us to find that Judge Roth violated the law precisely in the manner with which he was charged. Had no criminal prosecution ever been instituted in connection with the judge's conduct brought to our attention by this record, we should still inquire whether he failed to comply with the criminal law.

■     Based on the undisputed facts, we find clear and convincing evidence that Judge Roth's actions amounted to criminal mischief in the third degree. ORS 164.345.[6] We find, therefore, that Judge Roth wilfully failed in this instance to comply with the law and committed a wilful violation of Canon 2A of the Oregon Code of Judicial Conduct. We do not imply that any violation of law, however trivial, harmless or isolated, would also be a violation of Canon 2A. Someday we may be called upon to draw the difficult line between censurable and noncensurable violations of law, but this case does not require it. Here, Judge Roth's conduct was grave, intentional and threatening. It falls on the censurable side of the line. It is therefore the order of this court that Judge Roth be censured.

        Accused censured.

---

[6] ORS 164.345 provides:

   "(1) A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that he has such a right, he tampers or interferes with property of another.