Argued and submitted March 3, judge censured May 17, 1988

In re Complaint as to the Conduct of
# THE HONORABLE BERT GUSTAFSON,
*Accused.*

(86-6-8; SC S34669)

756 P2d 21

Jacob Tanzer, Ball, Janik & Novack, Portland, argued the cause and filed a brief on behalf of Judge Gustafson.

Gary A. Rueter, Haugeberg, Rueter, Stone & Gowell, P.C., McMinnville, argued the cause and filed a brief on behalf of the Commission on Judicial Fitness.

PER CURIAM

## PER CURIAM

The Commission on Judicial Fitness conducted an inquiry into allegations of misconduct against Judge Bert Gustafson, a judge of the Tillamook County District Court. After a hearing, the Commission found that charges arising in 13 cases were proved by clear and convincing evidence, and that those in 14 other cases were not proved. The Commission recommended that this court censure Judge Gustafson. Three members of the Commission also recommended a six-month suspension. Upon our own review of the record, we agree with the Commission and censure Judge Gustafson.

The pertinent constitutional provisions governing discipline of judges are set out in Article VII (Amended), section 8(1)(b) and (e), of the Oregon Constitution. It provides:

"(1)   In the manner provided by law, and notwithstanding section 1 of this Article, a judge of any court may be removed or suspended from his judicial office by the Supreme Court, or censured by the Supreme Court, for:

"'* * * * *

"(b)   Wilful misconduct in a judicial office where such misconduct bears a demonstrable relationship to the effective performance of judicial duties; or

"'* * * * *

"(e)   Wilful violation of any rule of judicial conduct as shall be established by the Supreme Court."

The rules of judicial conduct anticipated in subsection (1)(e) were previously established by this court in the Code of Judicial Conduct.

Under the constitutional provisions, both "misconduct" related to the performance of judicial duties and "violation of any rule of judicial conduct" must be "wilful" before a judge can be removed, suspended, or censured by this court. Although we review "the law and facts" upon the record made before the Commission, ORS 1.430(1), in this case the objective facts as found by the Commission are, with immaterial exceptions, essentially undisputed. There is a dispute between the Commission and Judge Gustafson whether the Commission misconstrued the term "wilful" in some or all of the instances in which the Commission found "wilful" violations or misconduct. Judge Gustafson concedes that the acts found

censurable by the Commission were improper, but he denies that they were wilfully so, and the Commission in turn does not press the dismissed charges in this court.

The Commission's findings occupy 24 pages, and in view of the nature of the disagreement we need not set out the facts of each in detail here. Most of the charges arose from Judge Gustafson's conduct toward defendants and their counsel in a number of criminal cases. Because the disputed issue is whether the conduct was "wilful," the parties begin their briefs with a discussion of that issue, and so shall we.

## I.

The Commission's opinion acknowledges that a judge's errors of law are reviewable in an appellate court and ordinarily do not constitute "wilful" misconduct subjecting the judge to disciplinary action. The opinion continues:

> "We construe 'wilful' as used in Article VII (Amended) Section 8(1)(e) of the Oregon Constitution to mean not only to act intentionally or deliberately, but to do such an act with bad or evil purpose, or wantonly and in disregard of the rights of others, or contrary to a known duty, or without authority and in reckless disregard of whether the judge had the right or not.

> "We construe 'wilful misconduct' as used in Article VII (Amended) Section 8(1)(b) of the Oregon Constitution to require improper or wrongful use of the powers of judicial office by a judge acting intentionally or with gross unconcern for his or her conduct and generally in bad faith. Bad faith involves more than an error of judgment or mere lack of diligence. Bad faith may be shown by specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of judicial authority."

(Citations omitted.) Judge Gustafson's brief states that "wilful" takes its meaning from the context in which it is used, citing a number of illustrations in Oregon cases. The brief continues:

> "The constitutional term 'wilful' sets a subjective standard, not an objective one. Thus, the constitution establishes as a prerequisite to official sanction that it be proved that a judge knew his conduct to be improper, but did it anyway. It is not sufficient to show that he reasonably should have known;

disregard of a known rule or criterion must be clearly and convincingly proved.

"A judge who acts in the mistaken belief that his conduct is legally authorized makes an error of law. The law provides procedures for the correction of such errors, e.g., appeal, mandamus, etc. A judge commits a wilful violation only when he knows his conduct to be contrary to law and proceeds despite that knowledge. Judges violate the law daily, but they are not in wilful violation of the law unless they have intentionally, knowingly or purposely violated the law.

"* * * * *

"In this constitutional context, involving the gravest of public action against elected judicial officials, wilfulness should be deemed to refer to intentional, knowing, deliberate abuse of judicial office of a magnitude sufficient to warrant disciplinary action."

In this court, the Commission defends its interpretation of "wilful" and insists upon an objective rather than subjective standard covering "wanton" or "reckless" disregard of his duties or the rights of others, and "gross unconcern for his or her conduct," regardless whether the judge realized its impropriety. Our prior decisions applying Article VII (Amended), section 8, have not dealt extensively with the question.[1]

"Wilful" is a notoriously problematic word, and defining it by its cousins, "wanton" and "reckless," merely triplicates the problem and does nothing to clarify it. In the context of providing for discipline, including possible removal, of an elected judge, we agree with Judge Gustafson's contention that "wilful" was used to include subjective as well as objective elements of culpability in assessing a judge's departure from the prescribed norms of conduct. It is not enough that a judge was negligent, that he "should have known better." Ignorance and incompetence are covered by a separate

---

[1] The Court necessarily found "wilfulness" but did not elaborate on its meaning in these cases in which it imposed sanctions upon judges under Article VII (Amended), section 8(1)(b) or (e): *In re Roth,* 293 Or 179, 189, 645 P2d 1064 (1982); *In re Jordan,* 290 Or 303, 316, 320, 324, 329, 331, 335-37, 622 P2d 297 (1981). It also found "wilfulness" without expressly defining it in *In re Piper,* 271 Or 726, 736, 534 P2d 159 (1975), a proceeding under *former* Article VII (Amended), section 8(1)(b), which permitted removal for "[w]ilful misconduct in a judicial office involving moral turpitude."

standard.[2] Adding the quantifying "gross" before negligent raises the degree of departure from proper conduct, but it bears on subjective culpability only when it leads to the inference that the judge necessarily must and in fact did know better.

A judge's act falls within Article VII (Amended), section 8(1)(b) or (e), only if the judge wilfully violates a rule of judicial conduct or otherwise misbehaves in relation to judicial duties to any degree, large or small; and error from carelessness or incompetence also must be wilful, if it is charged under those provisions rather than under section 8(1)(d) as "generally incompetent performance of judicial duties." An improper motive can taint an otherwise permissible act, and a benign motive will not excuse the intentional or knowing violation of a nondiscretionary norm. Also, ignorance of the governing standards of conduct themselves no more excuses judges than those whom they judge.

■ As Judge Gustafson's brief notes, in the criminal law "wilful" and its synonyms have been replaced as tests of culpability by the mental states of "intent" and "knowledge." ORS 161.085(7) and (8). Neither requires knowledge of the law alleged to have been broken, as distinct from knowledge of some other law that may be an element of an offense. The mental element of knowledge in any offense refers to awareness of conditions and circumstances in which the rule of conduct applies, and intent refers to the conscious objective of causing the result or of acting in the manner defined in the rule of conduct. Similarly, we hold that a judge's conduct is "wilful" within the meaning of Article VII (Amended), section 8, if the judge intends to cause a result or take an action contrary to the applicable rule and if he is aware of circumstances that in fact make the rule applicable, whether or not the judge knows that he violates the rule.

---

[2] Article VII (Amended), section 8(1), of the Oregon Constitution provides:

"(1)  In the manner provided by law, and notwithstanding section 1 of this Article, a judge of any court may be removed or suspended from his judicial office by the Supreme Court, or censured by the Supreme Court, for:

"* * * * *

"(d)  Generally incompetent performance of judicial duties."

## II.

The Commission grouped its allegations into four types of charges:

(1) violations of Canon 2A ("A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary,") and 3A(3) ("A judge should be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity");

(2) failure to afford litigants and their lawyers full rights to be heard according to law, contrary to Canon 3A(4) ("A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding");

(3) ex parte contacts or communications contrary to the same canon; and

(4) failure to "disqualify himself or herself in proceedings in which the judge's impartiality might reasonably be questioned" for "personal bias or prejudice" or "personal knowledge of disputed evidentiary facts," as required by Canon 3C(1).

The Commission also charged and found "wilful misconduct" under section 8(1)(b), and it charged but did not find that Judge Gustafson was generally incompetent to perform judicial duties within the meaning of section 8(1)(d). It is apparent that the canons, which were written long before Article VII (Amended), section 8(e), turned them into rules enforceable by legal proceedings against the judge, include aspirational phrases and leave implicit the requirements of "intent" or "knowledge" discussed above.

The Commission found improper conduct in 13 criminal cases in as many months between February 1, 1985, and February 23, 1986. For convenience, we set out the Commission's chart identifying these cases, the essence of the alleged misconduct, and the allegedly violated norms.

| "2/1/85 | State v. Niswender | Refusal to Grant Continuance | Canons 2A, 3A(3), 3A(4); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
|---|---|---|---|
| "8/20/85 | State v. Rich | Refusal to Grant Continuance | Canons 2A, 3A(3); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "8/23/85 | State v. Wing | Discharge of Defendant's Attorney | Canons 2A, 3A(3), 3A(4); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "8/26/85 | State v. Bezley | Discharge of Defendant's Attorney | Canons 2A, 3A(3), 3A(4); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "8/27/85 | State v. Radtke | Refusal to Recuse | Canon 3C(1); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "10/23/85 | State v. DeCambra | Discharge of Defendant's Attorney | Canons 2A, 3A(3), 3A(4); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "11/5/85 | State v. David Smith | Remarks and Attitude Toward Attorney | Canons 2A, 3A(3); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "1/23/86 | State v. Corum | Improperly Limiting Defendant's Argument | Canons 2A, 3A(3), 3A(4); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "4/16/86 | State v. Hamilton | Improperly Resentencing Defendant | Canons 2A, 3A(3); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "4/23/86 | State v. Visnaw | Inadequate Notice to Counsel of Court Proceedings; Proceeding in Absence of Defendant's Attorney | Canons 2A, 3A(3); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |

| "5/9/86 | State v. Page | Improperly Resentencing Defendant | Canons 2A, 3A(3); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
|---------|---------------|-----------------------------------|-------------------------------------------------------------------|
| "6/25/86 | State v. Schmid | Discharge of Defendant's Attorney; Improper Remarks to Defendant's Attorney | Canons 2A, 3A(3), 3A(4); Or. Const. Art. VII (Amended) § 8(1)(b) and (e) |
| "2/23/87 | State v. Endicott | Arbitrarily and Unreasonably Enforcing Court Rule Requiring Defendant's Personal Appearance on Minor Misdemeanor Charge | Canons 2A, 3A(3); Or. Const. Art. VII (Amended) § 8(1)(b) and (e)." |

As already stated, the factual events in these cases are not disputed. Many but not all involved conflicts between Judge Gustafson and defense counsel, particularly Public Defender Constance Crooker. We only summarize them here; if needed for future cases, the Commission's evidence and findings are accessible as a public record. ORS 1.440(1). Also, as already noted, Judge Gustafson does not dispute in this court that his actions were improper but only that they were "wilful" within the meaning of Article VII (Amended), section 8.

### III.

In four cases, *State v. Bezley, State v. Wing, State v. Schmid,* and *State v. De Cambra,* the Commission found that the judge improperly interfered with defense counsels' representation of their clients.

Bezley, whose Portland lawyer had written the court that his client pleaded not guilty to driving under the influence of intoxicants and asked for a jury trial, appeared without his lawyer at a "disposition conference" set by the court to

determine whether the case would be tried. The lawyer had instructed Bezley to repeat the request for a jury trial and to tell the court that counsel would be available on whatever date the trial was scheduled. Counsel had not been told that he could appear at the hearing by telephone. After an unsuccessful attempt by the district attorney to reach defendant's lawyer by telephone, Judge Gustafson told defendant that he was not being well represented and would be given time to obtain another lawyer. The judge then entered an order discharging defense counsel for failure to attend the hearing.

The Commission found that this act violated the previously quoted Canons 2A, 3A(3), 3A(4), and constituted misconduct under subsection 8(1)(b). We agree that there was no legal basis for "discharging" defense counsel without defendant's request or consent. This act denied a "person * * * or person's lawyer, full rights to be heard according to law," Canon 3A(4), it did not "respect and comply with the law," Canon 2A, and it was not "patient" with defendant or his lawyer, as demanded by Canon 3A(3). Judge Gustafson's conduct was wrong, as he concedes, but we are not persuaded that it was "wilful." He seems to have suffered from a misconception of a judge's authority to "discharge" a defense lawyer who was not appointed by the court but engaged by defendant himself. We might not believe that this was mere ignorance if Judge Gustafson were a more experienced judge, or if there were evidence of animus against Bezley or his lawyer, but there is not. We find misconduct but not the subjective culpability required for "wilful" misconduct.

*Wing, Schmid,* and *De Cambra* each involved representation by the same public defender, Constance Crooker. In *Wing,* Ms. Crooker had filed a petition for a writ of mandamus to disqualify Judge Gustafson after the judge had declined to disqualify himself. She then asked to postpone Wing's trial pending disposition of the writ, but Judge Gustafson said that he would deny a motion for a continuance. When Ms. Crooker at Wing's trial renewed her objection to proceeding with the trial, because it might waive her client's rights to a change of judge, Judge Gustafson discharged her as Wing's lawyer without Wing's or her consent. He then appointed another lawyer and postponed the trial. On the reset trial date, defendant's new lawyer moved to postpone the trial to await the decision in the mandamus proceeding (which eventually resulted in

disqualification of Judge Gustafson), and this time Judge Gustafson granted the motion to postpone.

In *Schmid,* Ms. Crooker was the lawyer for a defendant who was placed on probation. She appeared on his behalf in a proceeding to show cause why his probation should not be revoked, in which Schmid himself failed to appear. The following day, she was notified to come to the district court to appear with Schmid, who had been arrested on the court's warrant. Schmid told Ms. Crooker that he wanted her to represent him in the revocation proceeding, because she knew the case better than anyone else, and he so wrote to Judge Gustafson. Ms. Crooker appeared at the proceeding, but when she stated that she intended to file a demurrer against the Order to Show Cause, the judge said that he had not yet decided whether to appoint her to represent Schmid. He did not acknowledge that she already represented Schmid, who had not yet been sentenced, although Ms. Crooker offered to proceed "pro bono." When she pursued the point, the judge told her that she was not Schmid's lawyer and threatened to hold her in contempt and send her to jail. He then appointed another lawyer for Schmid, over Schmid's objections. That lawyer asked to be relieved after learning of Schmid's wishes, and the proceeding eventually was heard by a visiting judge with Ms. Crooker's participation. Essentially the same events transpired, less dramatically, in *De Cambra,* in which Ms. Crooker also offered to appear pro bono for a client whom she was representing in another criminal case, except that De Cambra's case proceeded with another lawyer.

Again, the Commission determined, and Judge Gustafson does not contest, that his conduct in these cases improperly interfered with an existing lawyer-client relationship and violated the cited canons and constitutional provisions. We find that the conduct was "wilful" within the meaning of Article VII (Amended), section 8(1)(b). A judge is not legally obliged to appoint the lawyer desired by an indigent defendant even when the lawyer is willing to serve, but when no cost to the public is involved and the lawyer is competent to undertake the representation, there should be some other persuasive reason to deny the defendant's choice of counsel. Defendants who engage their own professionally qualified counsel are entitled to have them heard, *see* Or Const, Art I, § 11, and problems of payment or conflicting

interests aside, there is no reason why the rights of indigent defendants need to be less.

A personal dislike or past experiences of conflict with the lawyer is not a permissible reason. The record shows that such conflicts had marked Judge Gustafson's relations with the public defender and that he felt himself engaged in a "contest of wills" with her. We believe the judge knew that personal feelings against a lawyer do not justify disqualifying the lawyer from representing a client who desires that lawyer's services, but that he allowed those motives to enter into his rulings on the representation of Wing, Schmid and De Cambra. We therefore find a wilful violation of Canons 2A, interference with the right of these three defendants to have their lawyer heard, contrary to Canon 3A(4), and "misconduct bear[ing] a demonstrable relationship to the effective performance of judicial duties," contrary to Article VII (amended), section 8(1)(b). Although most displays of impatience are not wilful, we find a wilful violation of the standards of patience and courtesy toward litigants and lawyers enjoined by Canon 3A(3) in *State v. Schmid,* but not in the other cases.

## IV.

The Commission also found that Judge Gustafson failed to respect and comply with the law and indulged in impatient, undignified, and discourteous behavior in *State v. Smith, State v. Visnaw, State v. Corum, State v. Niswender,* and *State v. Rich.* We find that Judge Gustafson did behave as charged, but that his conduct was "wilful" within the meaning of Article VII (Amended), section 8(1)(e), only in *Smith* and *Visnaw.*

In *Smith,* defendant's lawyer told Judge Gustafson that he had not fully heard all the judge's instructions to the jury and requested him to ask the jurors whether they had heard the instructions. The judge told counsel, "Maybe you should check your hearing" and did not act on the request. We believe that Judge Gustafson could not be unaware that his conduct was impatient and rude, whether or not he realized that it also might prejudice the defendant's case.

In *State v. Visnaw,* the public defender, Ms. Crooker, received notice that defendant would be arraigned at 9:20 a.m. Judge Gustafson commenced the proceeding before her arrival

at 9:22 a.m. The judge did not recognize either Ms. Crooker or another lawyer from the public defender's office as defendant's lawyer, and he later declined to review with her what had occurred at the arraignment, saying, "I'm not in the habit of repeating what I already did." As in *Smith*, we do not believe that Judge Gustafson could be unaware that his conduct was impatient and discourteous, and in the context of the other cases already discussed, we believe it was partly based on his personal feelings about the public defender. We therefore find a wilful violation of Canon 3A(4).

In *Corum*, defendant's lawyer answered Judge Gustafson's question about the expected length of closing argument by estimating approximately 30 minutes. After about 25 minutes of closing argument, the judge called the lawyer to the bench and told him that he had only five minutes remaining, and when that period had elapsed, the judge would not let the lawyer continue and finish his argument. His conduct was impatient and discourteous, as the Commission found, but not wilfully so.

In *Niswender* and *Rich*, Judge Gustafson denied motions for continuances in which the prosecution and defendants had joined. The denial in *Niswender* led the Court of Appeals to reverse the conviction for abuse of discretion. *State v. Niswender*, 79 Or App 539, 719 P2d 517 (1986). The Commission concluded:

"[N]o consideration was given to the clearly legitimate reasons for which the parties were seeking postponement."

The criticism is justified. In *Niswender*, the parties had unsuccessfully tried to have a subpoena served on an important witness who had moved to another county, and the judge refused a continuance on the basis of an unpublished rule he had adopted that trials would be postponed only if a subpoenaed witness failed to appear. In *Rich*, a motion to postpone informed the judge two weeks before the scheduled trial date that an important prosecution witness had a long-standing vacation planned for that date, and at a hearing on the day before trial, he was told that defendant's lawyer was tied up in another trial that had taken longer than expected. In both cases, postponement would have been proper not only to preserve the parties' "full rights to be heard according to law," Canon 3A(4), but also to avoid potentially prejudicial

error. The judge's motive appears to have been to impress on the prosecutor and defense lawyers the importance that he attached to meeting his trial schedule. Unlike interference with the constitutionally protected lawyer-client relationship, as in *Wing, Schmid,* and *De Cambra,* in matters of administering justice "without delay,"[3] the constitution leaves the judge with a responsibility independent of the interests of litigants, *see Haynes v. Burks,* 290 Or 75, 80, 619 P2d 632 (1980). Judge Gustafson disregarded "clearly legitimate reasons" for granting postponements, but we do not find clear and convincing evidence that he realized this or did so with an impermissible motive.

## V.

The Commission also found various forms of misconduct in several other cases, *State v. Hamilton, State v. Page, State v. Endicott,* and *State v. Radtke.*

In *Hamilton* and *Page,* the Commission found that Judge Gustafson on his own motion changed decisions of a visiting judge who had sentenced defendants convicted of driving under the influence of intoxicants, resulting in a more onerous sentence on revocation of Hamilton's probation and an order that Page pay an alcohol evaluation fee that the visiting judge had waived. The Commission found that Judge Gustafson acted contrary to law, Canon 2A, without knowing whether he had a legal basis for these actions. In *Hamilton,* the Commission relied on Judge Gustafson's own testimony that he had no inclination to see whether he had authority to change the visiting judge's sentence to show that the action was "wilful." We agree that actions taken in conscious ignorance of their legal basis and without seeking to determine their lawfulness is "wilful." We find no clear and convincing evidence, however, that Judge Gustafson acted with such conscious awareness in *Page.*

In *Endicott,* defendant posted bail by mail in the amount shown on a misdemeanor citation. Judge Gustafson ordered him to appear in person at the time stated in the

---

[3] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

citation, invoking a local rule that he apparently had adopted, but which he applied only when bail was more than $100. Neither defendant nor his lawyer was notified that the appearance could be by telephone, and defendant made an unnecessary seven-hour round trip only to enter a plea of not guilty. We find Judge Gustafson's order in the face of what appeared on the citation, to be unreasonable and inconsiderate of a litigant, but we do not find the subjective element of wilfulness within the meaning of Article VII (Amended), section 8(1)(b) or (e).

In *Radtke,* the Commission determined that Judge Gustafson should have recused himself, as defendant requested, in a case in which his judicial assistant was a material witness. The evidence shows that the judge originally marked defendant's proposed order "Denied" and "no timely filing." At the commission's hearing, Judge Gustafson could not recall what he meant by the notation or why he denied the motion. He eventually recused himself at the last moment after he himself was summoned as a witness in the preliminary hearing. Because the original denial occurred about the time of the judge's other conflicts with the public defender, Ms. Crooker, who represented Radtke, the Commission had some basis to suspect that these personal conflicts played a role in Judge Gustafson's reaction to her motion for recusal, and perhaps it did; but we do not find the evidence sufficiently clear and convincing to conclude that his conduct was wilful.

## VI.

In sum, we find that Judge Gustafson's conduct repeatedly fell short of the governing standards of judicial conduct and that it was "wilful" within the meaning of Article VII, (Amended), section 8(1)(b) and (e) in those instances identified above.

As to the sanction, the judge's brief in this court paints the picture of "an inexperienced judge in a new court who had not yet learned to exercise authority expertly" and argues that "ability to deal dispassionately with disagreeable conduct and events" is something that must be learned. We acknowledge the point, although the personality, attitudes and style that a new judge brings to the bench may leave a lot more or less to be learned on the job, and Judge Gustafson's

manner plainly was authoritarian rather than judicial. Necessary as it is to try cases expeditiously and to keep the court's docket current, this can be accomplished without displays of rudeness to litigants and lawyers, and it does not justify interfering with the legal representation of litigants to which the law entitles them. Although Judge Gustafson was slow to recognize that his conduct in office fell short of judicial standards, it appears that he has undertaken steps to learn from his unfortunate start. We see no need for, or useful purpose to be served by, a suspension.

Accordingly, the foregoing opinion will serve as a judgment of censure of Judge Gustafson's conduct.