Argued and submitted November 2, 2001, accused suspended from office without salary for 30 days February 14, 2002

## Inquiry Concerning a Judge re

## The HONORABLE ALBIN W. NORBLAD,
*Accused.*

## (CJFD 00-010; SC S48522)

39 P3d 860

James B. Rich, of Harris, Wyatt & Amala, Salem, argued the cause for the accused. With him on the brief was J.P. Harris II.

Don H. Marmaduke, of Tonkon Torp LLP, Portland, argued the cause for the Oregon Commission on Judicial Fitness and Disability. With him on the brief was Robyn E. Ridler.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, and Balmer, Justices.*

---

\* Leeson and De Muniz, JJ., did not participate in the consideration or decision of this case.

PER CURIAM

## PER CURIAM

This is a proceeding under ORS 1.420, ORS 1.430, and Article VII (Amended), section 8, of the Oregon Constitution, to inquire into the conduct of a circuit court judge. The Oregon Commission on Judicial Fitness and Disability (Commission) determined, following a hearing, that Albin W. Norblad (the accused), a judge of the Circuit Court of the State of Oregon for Marion County, had violated the Code of Judicial Conduct (Code) and recommended that this court impose a conditional sanction. Alternatively, the Commission recommended that this court suspend the accused without pay for one month.

This court reviews the record *de novo*. ORS 1.430. On review under that standard, we conclude that the accused violated the Code and suspend him for a period of 30 days, during which he shall not receive the salary of his public office.

The facts are not contested. The accused has been a judge in Marion County since 1977. On January 27, 2000, he drove while intoxicated from Christmas Valley to the vicinity of Salem, a drive requiring nearly eight hours. The accused was returning from a vacation in Mexico and had spent the night in Nevada. He drove all day and met with friends in Christmas Valley where the accused imbibed what he characterized as three "stiff" drinks without eating. The accused then left Christmas Valley and subsequently stopped for more liquor. He continued driving erratically toward his Salem-area home. Several drivers called the state police to report the accused's dangerous driving. He eventually exited Interstate 5, 10 miles and several exits past his home, around 11:00 p.m.

The accused, who now was being followed by a state trooper, proceeded to run a red light and stop in the middle of an intersection. The accused then made a sweeping turn, which took him into the opposing lanes of travel. The trooper activated his emergency lights, but the accused continued driving. When the accused finally stopped, the trooper found an open container of alcohol in the accused's automobile. Additionally, the trooper observed that the accused had "red

and glassy eyes" and a "dazed, stuporous and lethargic appearance." The accused smelled of alcohol, could not stand without assistance, and either could not perform or failed all the sobriety tests administered. The accused blew .20 on the Breathalyzer, more than twice the legal limit. *See* ORS 813.010(a) (setting .08 blood alcohol limit). He does not remember any of the drive from Christmas Valley and acknowledges that he was "smashed."

The state charged the accused with driving under the influence of intoxicants. ORS 813.010. However, he chose to petition for and complete a "diversion" program, and the charges were dropped after three months of weekly substance abuse counseling. The accused has a history of misusing alcohol and admits that he tends to "minimize" the facts when discussing his drinking. While in the diversion program, he attended Alcoholics Anonymous (AA) meetings and abstained from alcohol. Since completing the program, however, the accused has resumed consuming alcohol, but he has reduced his intake to one or two glasses of wine a night. He no longer attends AA.[1]

The Commission concluded that the accused's actions violated Judicial Rule (JR) 1-101(B), which states that "[a] judge shall not commit a criminal act." The Commission further concluded that the accused violated JR 1-101(A), which provides:

"A judge shall observe high standards of conduct so that the integrity, impartiality and independence of the judiciary are preserved and shall act at all times in a manner that promotes public confidence in the judiciary and the judicial system."

Finally, the Commission concluded that the accused violated JR 1-101(C), which provides:

"A judge shall not engage in conduct that reflects adversely on the judge's character, competence, temperament or fitness to serve as a judge."

---

[1] The accused provided information about his habits when he was questioned by the Commission. There is no evidence that the accused ever took the bench while under the influence of alcohol.

The Commission stated that the accused's lack of judgment reflects badly, not just on his own character, but also on the judiciary as a whole. In the Commission's view, the accused's errors in judgment, even though they occurred off the bench, "were of such a magnitude as to engender concern about the [j]udge's on-the-bench judgment."

The Commission recommended that this court impose a "censure with conditions," which it explained as follows:

"Specifically, the Commission recommends that Judge Norblad be censured, in lieu of suspension, on condition that he be directed to:

"1.   enroll in, pay for, and faithfully attend a private weekly alcohol counseling program administered by a psychiatrist who is acceptable to the Commission, for at least a six-month period;

"2.   abide by any recommendations the psychiatrist might have for post-counseling therapy thereafter, including, if need be, further counseling;

"3.   attend two AA meetings per week for six months; and

"4.   refrain from ever driving after drinking."

The Commission recommended the conditional censure because of its punitive and rehabilitative qualities. If the accused does not comply with those conditions, then the Commission recommends that the matter be referred to it for further action.

Publicly, the accused has taken responsibility for his wrongdoing. He does not dispute the Commission's conclusion that he violated the Code by driving under the influence. However, the accused maintains that no official sanction is necessary. Instead, he suggests that the Chief Justice and the Presiding Judge of Marion County could handle the matter informally. If this court deems the matter significant enough to require an official sanction, then the accused maintains that only a censure without conditions is appropriate.

In support of that argument, the accused relies on *In re Roth*, 293 Or 179, 645 P2d 1064 (1982), in which this

court censured a judge for his off-the-bench behavior. In that matter, the accused judge had driven his car into an automobile occupied by his estranged wife and her friend. He also had slapped his wife. The accused judge was arrested and charged, but the matter was resolved out of court. The Commission found violations of the Code and recommended that the accused judge be censured. This court agreed. *Id.* at 189.

Apart from the obvious factual distinctions, the Commission appears to have come to very different conclusions regarding the likelihood of recurrence in the two matters. In *Roth*, the Commission found that there was "no likelihood of repetition in the future." *Id.* at 184. In this proceeding, however, it is evident, both from the findings and the recommendation, that the Commission is concerned about the likelihood of a repetition of the misconduct.

We share the Commission's concerns. The accused's position appears to us to so downplay the seriousness of his conduct that it leaves us in substantial doubt that he comprehends the gravity of his recklessness. We conclude that the alternative 30-day unpaid suspension that the Commission recommended is the sanction that most likely will serve not only to discourage such behavior generally, but will impress upon the accused an appreciation for the gravity of his conduct.

The accused is suspended from office without salary for a period of 30 days, commencing on the effective date of this decision.