690 August 8, 2024 No. 29

IN THE SUPREME COURT OF THE
STATE OF OREGON

Inquiry Concerning a Judge,
re: THE HONORABLE BETHANY P. FLINT,
*Respondent.*
(SC S071223)

On review of the Commission on Judicial Fitness and Disability Stipulation to Public Censure.

Considered and under advisement July 30, 2024.

Before Duncan, Garrett, Bushong, James, and Masih, Justices.*

PER CURIAM

Respondent is censured.

_____

  * Flynn, C.J., and DeHoog, J., did not participate in the consideration or decision of this case.

## PER CURIAM

This is a proceeding to inquire into the conduct of a circuit court judge. ORS 1.410 establishes the Commission on Judicial Fitness and Disability (Commission), and ORS 1.420 to 1.430 set out procedures by which the Commission may investigate any complaint concerning the conduct of a judge. Those procedures permit the Commission and a judge who is the subject of a complaint to enter into a stipulation as to the facts and the appropriate sanction. ORS 1.420(1)(c); ORS 1.430(2). One permissible sanction is censure by this court. ORS 1.430(2); *see also* Or Const, Art VII (Amended), § 8(1)(e) (authorizing censure by the Supreme Court as sanction for "[w]ilful" violation of a rule of judicial conduct); *In re Gustafson*, 305 Or 655, 660, 756 P2d 21 (1988) (explaining what qualifies as "wilful" "conduct").

In this proceeding, the Commission and respondent, the Honorable Bethany P. Flint, a judge of the Circuit Court of the State of Oregon for Deschutes County, have agreed to a Stipulation to Public Censure, which provides, in relevant part:

"Stipulated Facts

"1.

"If a contested hearing were held in this matter, clear and convincing evidence would be presented sufficient to establish the facts that follow:

"Incident One

"2.

"On September 14, 2020, the Respondent had a conversation with a personal friend regarding the process to obtain a Family Abuse Prevention Act ('FAPA') restraining order. The Respondent informed the friend of the filing deadline if she wished to appear before a judge on the same day of the filing [of] a petition for a FAPA restraining order. The Respondent also informed the friend of the option to fill out the requisite forms online, how to create an account to do so, and explained the process to appear remotely for an *ex parte* restraining order hearing. The Respondent did not draft, prepare, nor file any documents for the friend.

"3.

"On or about September 14, 2020, the Respondent's friend attended an *ex parte* hearing in front of another judge in Deschutes County and obtained the restraining order.

"4.

"After the *ex parte* hearing in the FAPA Matter, the friend contacted the Respondent and stated that she felt she had been treated poorly by the issuing judge. The friend asked the Respondent how to go about dismissing the FAPA Matter. The Respondent told her friend she could take any action that she felt was in her best interest and then referred her to a local attorney for representation.

"5.

"On September 20, 2020, the issuing judge came to the Respondent's chambers and inquired into how she generally handled restraining order cases involving petitioners that appear to lack credibility. Based upon the information the issuing judge provided, the Respondent realized that the issuing judge was referring to the FAPA Matter with her friend. In response to the issuing judge's comments, the Respondent vouched for her friend's credibility, disclosed that she had made observations at the friend's home that were consistent with the friend's testimony, and told the issuing judge that her friend felt ill-treated during the hearing.

"6.

"On or after September 20, 2020, the Respondent complained to the presiding judge about the issuing judge's tone during the *ex parte* hearing.

"7.

"After September 2020, the Respondent wrote an opinion letter about the issuing judge in a motion to set aside a different restraining order case.

"Incident Two

"8.

"On Sunday October 9, 2022, the Respondent received a call from a community member at her personal residence, and learned that the husband of a close friend (a different person than involved in the above paragraphs 2-7) had

been found deceased as a likely victim of homicide and that the police were going to question that friend.

"9.

"While driving to her close friend's home, the Respondent called a criminal defense attorney in hopes of referring her close friend to an attorney. When the Respondent arrived at her close friend's home, she did not see any law enforcement officers nor marked vehicles. This was not the crime scene.

"10.

"While standing outside the close friend's residence with her friend's children, the Respondent introduced herself as their mom's friend and asked if they had been interviewed, who was with them during the interview, and gave advice about what to do if they were asked for an interview again.

"11.

"The Respondent also advised her close friend to not speak with any law enforcement without an attorney.

"12.

"The Respondent entered the house and encountered local law enforcement in the living room, while she remained in the room's doorway. The Respondent intervened in the conversation with law enforcement more than once. The Respondent then asked her friend if she wanted a lawyer, to which her friend replied yes. The Respondent told the detectives, 'She needs to have a lawyer with her' and ended the questioning.

"13.

"On October 10, 2022, the Respondent met with the county's presiding judge to inform him that she had contact with the law enforcement on the murder investigation and would need to be conflicted off any related case.

"14.

"On October 12, 2022, the Respondent self-reported the encounter with law enforcement to the Commission on Judicial Fitness and Disability.

"Violations

"The Respondent admits, that, by engaging in the conduct described herein, she violated the following rules of the

Code of Judicial Conduct adopted by the Oregon Supreme Court:

"1.   Rule 2.1(A), which provides [that] '[a] judge shall observe high standards of conduct so that the integrity, impartiality and independence of the judiciary and access to justice are preserved and shall act at all times in a manner that promotes public confidence in the judiciary and the judicial system'; and

"2.   Rule 2.1(C), which provides [that] '[a] judge shall not engage in conduct that reflects adversely on the judge's character, competence, temperament, or fitness to serve as a judge'; and

"3.   Rule 2.2, which provides [that] '[a] judge shall not use the judicial position to gain personal advantage of any kind for the judge or any other person'; and

"4.   Rule 3.3(A), which provides [that] '[a] judge shall uphold and apply the law and perform all duties of judicial office, including administrative duties, fairly, impartially, and without bias or prejudice'; and

"5.   Rule 3.3(C), which provides [that] '[a] judge shall not take any action or make any comment that a reasonable person would expect to impair the fairness of a matter pending or impending in any Oregon court'; and

"6.   Rule 4.8(A) which provides that a judge 'shall not practice law.'

### "Sanction

"The Respondent and the Commission agreed that the appropriate sanction in this case is a censure, and by their signatures, they consent to the imposition of censure upon the Respondent by the Oregon Supreme Court."

Pursuant to ORS 1.430(2), we have reviewed the Stipulation to Public Censure, to which respondent has consented. Based on the stipulation, we conclude that, at a minimum, respondent has violated Rule 2.1(A), and we approve the stipulation to censure.

Respondent is censured.